**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Michael Saunders, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 12 C 9158 |
| v. | ) | |
| | ) | |
| City of Chicago, et al., | ) | Honorable Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

### <u>DEFENDANT VALENTINI'S ANSWER TO PLAINTIFF'S COMPLAINT</u>

Defendant, Fabio Valentini ("Valentini"), by and through his attorney, Anita Alvarez, State's Attorney of Cook County, and her assistants, Donald J. Pechous, Lisa M. Meador, and Thomas E. Nowinski, Assistant State's Attorneys, answers Plaintiff's Complaint as follows:

1.      Plaintiff Michael Saunders spent over half of his life in prison for a crime he did not commit.

**ANSWER:**      Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1.

2.      Michael was arrested at the age of fifteen for the brutal strangulation-murder and rape of a woman named Nina Glover. Police claimed he committed this crime along with four other teenagers, ranging in age from 15 to 18: Terrill Swift, Harold Richardson, Vincent Thames, and Jerry Fincher.

**ANSWER:**      Defendant Valentini admits that Plaintiff was arrested for the rape and murder of Nina Glover and was fifteen years old at the time. Defendant Valentini further admits that Terrill Swift, Harold Richardson, Vincent Thames, and Jerry Fincher also were arrested.

Defendant Valentini is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 2.

3. None of the teenagers had anything to do with this horrible crime. Ms. Glover was actually raped and murdered by a man twice their age that none of them knew who had a lengthy record of strikingly similar violent assaults: Johnny Douglas, also known as "Maniac."

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3.

4. Remarkably, Douglas was present at the scene where Ms. Glover's body was discovered, and was one of the first people that police interviewed. But Defendant Officers failed to pursue Douglas and he was never brought to justice. Douglas tragically went on to commit a number of other violent crimes throughout the Chicago area, including a string of attacks on prostitutes in Chicago's South Side.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4.

5. After Defendant Officers' failure to connect Douglas to Ms. Glover's murder, the case went cold. Several months later, Defendant Officers coerced and fabricated confessions from vulnerable suspects, consistent with the custom and practice of the Chicago Police Department in numerous other cases.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5.

6. Defendant Officers, in conjunction with several Assistant State's Attorneys investigating the case with them, ultimately coerced and fabricated confessions from all five of the teenagers. Despite the fact that all five teens were innocent and did not know true perpetrator

Johnny Douglas or otherwise have any knowledge of the crime, the fabricated and coerced confessions all told consistent stories falsely implicating all five teens in Ms. Glover's rape and murder. Each confession also included true but nonpublic details about Ms. Glover's murder, which were fed to the juveniles by the Defendants to include in their confessions.

**ANSWER:**    Defendant Valentini admits that five individuals gave statements implicating themselves in the murder of Nina Glover. Defendant Valentini denies that he coerced or fabricated any confessions from any of the individuals suspected of the crime. Defendant Valentini denies that he fed any details about the murder to any of the individuals suspected of the crime. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 6.

7.    While Defendants' coercion and fabrication of false confessions from five innocent teenagers is appalling, it was no aberration. The Chicago Police Department has a pattern and practice of using unconstitutional means to obtain confessions from juveniles, people with mental disabilities, and other vulnerable suspects. Between 1991 and 2001, Chicago police obtained confessions in at least 247 murder cases that were eventually thrown out by courts as tainted or failed to secure a conviction. Many of these, as detailed below, include appalling instances of Chicago police using physical and psychological coercion, along with outright fabrication, to secure confessions from juveniles and people with mental disabilities.

**ANSWER:**    Defendant Valentini denies that he coerced or fabricated false confessions from any of the individuals suspected of the murder of Nina Glover. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 7.

3

8.      Because the five teens were innocent, no true evidence implicated them in the Glover rape/murder. Not only did no forensic evidence ever link Michael or the other four teens to the crime, but DNA evidence at the time of trial actually excluded all five as the source of semen collected from Ms. Glover's body at autopsy. It was only as a result of Defendants' misconduct that Michael and the other teens were ever charged in the Glover rape/murder, let alone convicted.

**ANSWER:**    Defendant Valentini denies the allegations against him contained in Paragraph 8. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 8.

9.      Michael and the other four teens were finally exonerated, almost 15 years after their convictions, when new DNA testing revealed that Johnny Douglas, the "Maniac," had actually raped and murdered Ms. Glover.

**ANSWER:**    Defendant Valentini admits that Plaintiff had his conviction overturned in 2011. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 9.

10.      Over sixteen years after he was robbed of his freedom for a crime he did not commit, Michael walked out of prison a free man. The State of Illinois granted Michael and the other teens a certificate of innocence on September 14, 2012.

**ANSWER:**    Defendant Valentini admits that Plaintiff was released from prison and that he was granted a Certificate of Innocence by the Circuit Court of Cook County. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 10.

11.     Just fifteen years old when he was arrested, Michael spent the most formative years of his life in several of Illinois's toughest adult prisons, separated from his family and friends, robbed of the most basic of freedoms. Plaintiff Michael Saunders files this civil rights action to bring the Defendants' misconduct to light, to ensure that they are held accountable for their actions, and to seek justice for the many years of his life that he lost for a crime he did not commit.

**ANSWER:**     Defendant Valentini admits that Plaintiff was fifteen years old at the time of his arrest for the murder of Nina Glover. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 11.

### Jurisdiction and Venue

12.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

**ANSWER:**     Defendant Valentini admits that Plaintiff brings this lawsuit pursuant to 42 U.S.C. §1983 alleging the deprivation of his Constitutional rights.

13.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

**ANSWER:**     Defendant Valentini admits the allegations contained in Paragraph 13.

14.     Venue is proper under 28 U.S.C. § 1391(b). The events giving rise to the claims asserted herein occurred in this judicial district and Defendant City of Chicago is a municipal corporation located here.

**ANSWER:**     Defendant Valentini admits the allegations contained in Paragraph 14.

## The Parties

15.     Plaintiff Michael Saunders is 33 years old. He currently lives with his cousin in Chicago. At the time of Ms. Glover's murder, Michael lived with his family in the Englewood area of Chicago. He was just 15 years old and enrolled in 9th grade at Tilden High School in Chicago, Illinois.

**ANSWER:**    Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning Plaintiff's current residence. Defendant admits the remaining allegations contained in Paragraph 15.

16.     At all relevant times, Defendants Kenneth Boudreau, Richard Paladino, James Cassidy, Thomas Coughlin, William Foley, Frank Valadez, and Pat McCafferty were detectives with the Chicago Police Department, and Defendant Charles Bowen was a Youth Officer with the Chicago Police Department; all were employed by Defendant City of Chicago and acting within the scope of their employment. They are sued in their individual capacities.

**ANSWER:**    Defendant Valentini admits that Defendants Kenneth Boudreau, Richard Paladino, James Cassidy, Thomas Coughlin, William Foley, Frank Valadez, and Pat McCafferty were detectives with the Chicago Police Department, and Defendant Charles Bowen was a Youth Officer with the Chicago Police Department who are all being sued in their individual capacities. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 16.

17.     At all relevant times, Defendant L. Tuldier was a sergeant with the Chicago Police Department, employed by Defendant City of Chicago and acting within the scope of his employment. He is sued in his individual capacity.

6

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17.

18. Defendants Boudreau, Paladino, Cassidy, Coughlin, Foley, Valadez, McCafferty, Tuldier, Bowen, and as-yet Unknown Current or Former City of Chicago Employees are referred to collectively as the "Defendant Officers."

**ANSWER:** Defendant Valentini admits the allegations contained in Paragraph 18.

19. Defendants Terence Johnson and Fabio Valentini were Assistant State's Attorneys, employed by the Cook County State's Attorney's Office. They are sued in their individual capacities.

**ANSWER:** Defendant Valentini admits the allegations contained in Paragraph 19.

20. The Defendant City of Chicago is a municipal corporation under the laws of the State of Illinois.

**ANSWER:** Defendant Valentini admits the allegations contained in Paragraph 20.

21. Defendant Cook County is a governmental entity within the State of Illinois, which consists in part of its Cook County State's Attorney's Office, and was at all relevant times the employer of Defendants Terence Johnson and Fabio Valentini. Defendant Cook County is a necessary party to this lawsuit.

**ANSWER:** Defendant Valentini admits that Cook County is a governmental entity within the State of Illinois and that it is a necessary party to this lawsuit in that it may have a duty to indemnify defendant Valentini and defendant Johnson. Defendant denies the remaining allegations contained in Paragraph 21.

22.     At some point between 11:30 pm on November 6, 1994, and the early morning of November 7th, Johnny Douglas raped and strangled Nina Glover to death in the Englewood area of Chicago. He then placed her nude body, wrapped in a blood-stained bed sheet along with her clothing and shoes, in a dumpster behind the Family Super Mart Liquor Store at 1400 W. Garfield Boulevard.

**ANSWER:**     Defendant Valentini admits that at some time late on November 6, 1994, in the early morning hours of November 7, 1994, Nina Glover was found murdered in the Englewood area of Chicago. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 22.

23.     Unfortunately, this was not Douglas' first rape or assault. By November 1994, Douglas had already amassed a long criminal history, including 60 Chicago arrests and 27 convictions. His prior crimes included:

a. On March 5, 1993, over two years before killing Ms. Glover, Douglas paid Debra Gibson to have sex with him and then assaulted her, hitting her head with a rock.

b. On May 5, 1993, Douglas attempted to force Brena Hillie to have oral sex with him. When she tried to escape, he beat her with a stick and cut her with broken glass.

c. On July 10, 1994, four months before killing Ms. Glover, Douglas met with a woman named Caprice Bramlett – in the exact same neighborhood he would later meet with Glover. Douglas raped Ms. Bramlett twice, and choked her. Douglas was convicted of aggravated sexual assault based on this incident and sentenced to six months in prison, but served half that.

8

d. On October 21, 1994, shortly after his release from prison and just weeks before meeting Ms. Glover, Douglas attempted to rape a woman named Hazel Speight. He grabbed her and demanded she undress, but someone else interrupted Douglas before he could complete the rape.

**ANSWER:**    Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23.

24.    At approximately 7:00 a.m. on November 7, 1994, Nina Glover's body was discovered by a garbage truck driver. An autopsy later revealed that she had been strangled.

**ANSWER:**    Defendant Valentini admits the allegations contained in Paragraph 24.

25.    Defendant Cassidy and other Chicago Police Department personnel were assigned to investigate the crime. When Defendant Cassidy arrived at the crime scene, the police identified three individuals present in addition to the garbage truck driver who had discovered the body: an assistant manager for the liquor store, a neighborhood resident who lived around the corner, and Johnny Douglas.

**ANSWER:**    Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25.

26.    Defendant Cassidy learned that Douglas lived in Chicago's North Side, nearly ten miles from the crime scene. Douglas had no explanation for his presence in the alley on that early Monday morning, and, despite the fact that DNA testing would later prove the presence of his semen in Ms. Glover's body, told police he knew nothing.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26.

27. All of the information detailed above about Douglas's prior criminal history was known to Chicago law enforcement when they encountered him at 7:00 a.m. on November 7, 1994, at the scene of the crime. On information and belief, Defendant Officers either failed to run Douglas's background, which would have alerted them to his significant criminal history, or ignored and suppressed what they found.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27.

28. After Defendant Officers failed to pursue Douglas at the time of Ms. Glover's murder, Douglas went on to terrorize many other women in Chicago. For example:

a. On June 17, 1995, a little over 6 months after killing Ms. Glover, Douglas raped and murdered Elaine Martin, along with her unborn child, while she was engaged in prostitution. As he had done with Ms. Glover, Douglas strangled Ms. Martin and left her body in a public location.

b. On April 14, 1997, Douglas raped and strangled another woman: Gytonne Marsh. Like Ms. Glover and Ms. Martin, Ms. Marsh's body was found discarded in public, in a garage. Douglas pled guilty to Ms. Marsh's murder many years later: he admitted to having sex with Ms. Marsh in exchange for cocaine, and choking her to death while they had sex.

c. On September 28, 1997, a few months after killing Ms. Marsh, Douglas raped Catie Oakes in his parents' garage; his DNA was later recovered from her clothing.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28.

29. During a subsequent prosecution of Douglas for one of these crimes, the Cook County State's Attorney's Office sought to introduce evidence of Douglas's *modus operandi* including physically assaulting and later strangling women after exchanging drugs for sex, and then abandoning their bodies in public locations. The State also pointed out that, when Douglas was confronted with the charges by five separate women that he had beaten and sexually assaulted them, he admitted doing so, but said that "nobody believed them because they were 'just whores.'"

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29.

30. Douglas's violence against women finally came to an end in 2008, when he was killed by Minosa Winters, who claimed self-defense. During the prosecution of Winters for Douglas's death, the State's Attorney's Office stipulated to Douglas's reputation in the community for violence, that Douglas's nickname was "Maniac," and that Douglas was "a major bully in the area who had violently attacked other people." Winters was acquitted.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30.

31. Despite the mountain of evidence against Douglas, Defendant Officers investigating in November, 1994, failed to link Douglas to Ms. Glover's death; after talking to individuals in the neighborhood, they found no other leads. The case went cold.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31.

32. The Chicago Police Department keeps track of open homicides and reports a homicide "clearance" rate to the public. During the 1990s and early 2000s, Chicago's homicide clearance rate was often less than stellar – between 40 and 70% depending on the year – leading to public concern over the hundreds of unsolved murder cases. But when officers obtained a confession, a case would be considered closed and counted as solved, improving the city's homicide clearance rate. This was true no matter the reliability of the confession or whether the case ultimately resulted in conviction.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32.

33. In the face of a cold murder case with no obvious leads, Defendant Officers did what Chicago police would routinely do: they started trying to generate their own. Chicago police would canvas the neighborhood where a crime occurred and press vulnerable individuals for more information, trying to find some excuse to further interrogate, and then manipulate, coerce, and/or force those individuals into confessing. With a confession in hand, the case would be one less unsolved homicide for the department, and the public, to worry about.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33.

34. On the night of March 7, 1995, four months after Nina Glover was murdered, the Defendant Officers detained 18-year-old Jerry Fincher, who was standing on the street outside his home, a few blocks from the alley where Ms. Glover's body had been found. The Defendant

Officers handcuffed Jerry, held him in their car at gunpoint, and took him to the Area One police station at 51st and Wentworth.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 34.

35. Jerry Fincher was detained at the police station for nearly two days. Despite telling the Defendant Officers that he knew nothing about the crime, he was kept in handcuffs, forced to spend two sleepless nights in interrogation rooms, and threatened with physical violence. Defendant Officers, including Defendant Valadez, fed Jerry details of the crime and told him that he would go to prison for the murder unless he cooperated. During the interrogation, one of the Defendant Officers placed a phone book against Jerry's chest and pounded the phone book with a flashlight in an effort to force him to confess. The Defendant Officers told Jerry that if he cooperated, he could go home.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35.

36. The Defendant Officers described to Jerry a false scenario where Jerry, along with other neighborhood teenagers, had taken Ms. Glover to a local basement at approximately 9 p.m. on November 6th, gang raped her, strangled her, and disposed of her body in the dumpster. Over time, the Defendant Officers minimized Jerry's role in the murder, saying that they knew he had simply stood watch as the other teens raped and murdered her.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36.

13

37.     Assistant State's Attorney ("ASA") Terence Johnson participated in the interrogation of Jerry Fincher along with the Defendant Officers.

**ANSWER:**     Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37.

38.     Eventually, Jerry acquiesced. Due entirely to the Defendant Officers' and ASA Johnson's coercion, Jerry began to regurgitate the details that the Defendants were feeding him about the murder. ASA Johnson took the coerced and fabricated statement from Jerry and reduced it to writing.

**ANSWER:**     Defendant Valentini admits that Jerry Fincher's statement to ASA Johnson was memorialized in writing. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 38.

39.     Defendants coerced Jerry Fincher into implicating four other neighborhood teenagers in the murder. Those names, whether initially provided by Fincher or Defendants, were Plaintiff Michael Saunders, Vincent Thames, Terrill Swift, and Harold Richardson. None of these teenagers, like Fincher, was involved in any way in the murder, and none knew true perpetrator Johnny Douglas or otherwise had any nonpublic knowledge about the Glover murder.

**ANSWER:**     Defendant Valentini admits that Jerry Fincher made statements implicating Plaintiff, Vincent Thames, Terrill Swift, and Harold Richardson in the murder of Nina Glover. Defendant denies that he coerced Jerry Fincher in any manner. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations related to other defendants contained in Paragraph 39.

14

40.     Given the circumstances under which Jerry's statement was obtained, no reasonable person would have believed that it provided reliable evidence implicating Jerry or the other teens in the Glover murder. Indeed, it did not: the statement was completely false, and Jerry and the other teens were all innocent of the Glover rape/murder.

**ANSWER:**    Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40.

41.     Jerry Fincher's statement was eventually suppressed as the product of coercion, and all charges against him dropped.

**ANSWER:**    Defendant Valentini admits that the charges against Jerry Fincher were dismissed. Defendant Valentini  denies the remaining allegations contained in Paragraph 41.

42.     The Defendant Officers, ASA Johnson, and ASA Valentini knew that Jerry's statement was coerced and false and merely a recitation of their fabrications. Nevertheless, after obtaining Jerry's statement, Defendant Officers started rounding up the other four teens mentioned in Jerry's coerced statement and bringing them, too, to be interrogated at the Area One station.

**ANSWER:**    Defendant Valentini denies the allegations against him contained in Paragraph 42. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations related to other defendants contained in Paragraph 42.

43.     Over the course of the next few days, Defendant Officers, working in concert with Defendant ASAs Johnson and Valentini, coerced each juvenile into "confessing" to taking part in the rape and murder of Ms. Glover.

**ANSWER:** Defendant Valentini denies the allegations against him contained in Paragraph 43. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations related to other defendants contained in Paragraph 43.

44. The Defendants used physical threats and violence, and undue pressure, in order to fabricate statements from each juvenile that told the same basic story, implicating the juveniles in a group rape and murder that had never taken place.

**ANSWER:** Defendant Valentini denies the allegations against him contained in Paragraph 44. Further answering, Defendant states that Harold Richardson and Plaintiff made oral statements to him implicating themselves and others in the murder of Nina Glover. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations related to other defendants contained in Paragraph 44.

45. So that their "confessions" would appear reliable, the Defendants deliberately fed the teenagers true details of the Glover murder. In particular, the Defendants told Michael and the others that Ms. Glover was strangled to death; that she was a known drug user and prostitute; that when her body was found, she was naked and there was evidence suggesting she had been sexually assaulted; that she had lacerations and bruises on her face, suggesting that she had been hit with a sharp object and physically assaulted; and that she was found in a dumpster, wrapped in a white sheet with gold flowers. Each of the teenagers included those details in their false "confessions."

**ANSWER:** Defendant Valentini denies the allegations against him contained in Paragraph 45. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations related to other defendants contained in Paragraph 45.

16

46.     The Defendants would also share information with each other while interrogating each juvenile, in order to ensure that each juvenile's ultimate "confession" matched the others in key respects.

**ANSWER:**     Defendant Valentini denies the allegations against him contained in Paragraph 46. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations related to other defendants contained in Paragraph 46.

47.     As a result of these tactics, Defendants ultimately obtained statements from each of the five juveniles that contained the same basic story: the five were standing on a street corner and saw Nina Glover across the street. They called Ms. Glover over and led her to the nearby basement of Vincent Thames's house. There, they each raped her while the others held her down, and then assaulted her with their fists, hit her head with a shovel, and ultimately choked and killed her. They wrapped the body in a sheet, and carried her through an alley to the dumpster where her body was found the next day.

**ANSWER:**     Defendant Valentini admits that Harold Richardson and Plaintiff made oral statements to him implicating themselves in the murder of Nina Glover. Defendant denies that he obtained statements from any of the other individuals suspected in the murder. Defendant denies that he coerced Harold Richardson and Plaintiff in any manner. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations related to other defendants contained in Paragraph 47.

48.     Even though each juvenile supposedly made this same confession to Defendants, independently and voluntarily, none of it was true. None of the teens knew Ms. Glover, none had lured her to Vincent's basement, none had raped her, none had assaulted her, none had hit her

with a shovel, none had choked her, and none had disposed of her body in a dumpster down the street. There was not a trace of physical evidence in the basement, near the dumpster, nor on any of the teens' clothing that connected any of the five teens to this brutal rape and murder. Instead, Ms. Glover was one of the many victims of Johnny Douglas, the "Maniac," who acted alone and had no connection to any of the five Englewood teens.

**ANSWER:** Defendant Valentini admits that Harold Richardson and Plaintiff made voluntary statements to him. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations related to other defendants contained in Paragraph 48.

49. Defendants then misrepresented the circumstances under which they had obtained statements from Plaintiff Michael Saunders, Vincent Thames, Terrill Swift, Harold Richardson, and Jerry Fincher, in their written reports and pretrial conversations with the Assistant State's Attorneys assigned to prosecute the case, concealing the coercion and fabrication they had used. To augment the appearance of the statements' reliability, Defendants also falsely represented in their written reports and pretrial conversations with the trial ASAs that the details about the crime, including nonpublic details, originated with the five juveniles, when in reality those details had been supplied by Defendants.

**ANSWER:** Defendant Valentini denies the allegations against him contained in Paragraph 49. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations related to other defendants contained in Paragraph 49.

50.     Soon after Defendants secured a coerced and fabricated final statement from Jerry Fincher, Defendant Officers including Foley and Paladino, picked up Michael Saunders while he was walking on the street, handcuffed him, and took him to the police station.

**ANSWER:**     Defendant denies that he took any statement from Jerry Fincher. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 50.

51.     Michael was just 15 years old at the time.

**ANSWER:**     Defendant admits the allegations contained in Paragraph 51.

52.     Over the course of the ensuing day, Defendant Officers, including Officers Paladino and Foley, repeatedly interrogated Michael for more than 6 hours, outside the presence of his parents or a lawyer and without advising him of his rights.

**ANSWER:**     Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52.

53.     Even though Michael requested a lawyer and his mother, Defendant Officers refused to provide him with a lawyer and did not call or locate his mother. her. [sic]

**ANSWER:**     Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53.

54.     Defendant Officers, including Paladino and Foley, used coercion and threats—both physical and verbal—to force Michael to implicate himself and the other teenagers in the story Defendant Officers had crafted. This included pulling out Michael's earring, slapping him, and telling him that if he did not confess, the officers would take him to the railroad tracks and

19

shoot him. Defendant Officers also threatened Michael that he would go away for the rest of his life if he did not cooperate.

**ANSWER:**    Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 54.

55.    Despite this pressure, Michael did not initially acquiesce. ASA Fabio Valentini, who had been working with ASA Johnson and the Defendant Officers, fabricated a written statement attributed to Michael Saunders implicating Michael and the other four teenagers in the rape and murder of Ms. Glover. Under pressure from Defendants, Michael signed this statement without reading it and initialed "corrections" which Defendants falsely represented had originated with Michael.

**ANSWER:**    Defendant Valentini admits that Plaintiff signed a written statement that summarized the oral statement that Plaintiff gave to ASA Valentini. Defendant denies the remaining allegations against him contained in Paragraph 55. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations related to other defendants contained in Paragraph 55.

56.    Before he was brought in for questioning by the police, Michael did not know anything about the Nina Glover murder. Although he vaguely knew Vincent Thames, Harold Richardson and Terrill Swift, he had never met Jerry Fincher. Michael had never discussed the Glover murder with any of the other teens.

**ANSWER:**    Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56.

20

57.     All information about the Glover murder in the written "confession" attributed to Michael—both true details, including the types of injuries she suffered and the manner of her death, and the false details of Defendants' gang-rape story—came from Defendants. Defendants showed Michael the statements they had crafted for the other four teenagers implicating themselves and Michael in the rape and murder. They also showed him photos of the victim's body as it was found, including close-ups of her injuries, and photos of her clothes found in the dumpster.

**ANSWER:**     Defendant admits that a photograph of Nina Glover was shown to Plaintiff for Plaintiff to identify at the time Plaintiff gave a statement to ASA Valentini. Defendant denies the remaining allegations against him contained in Paragraph 57. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations related to other defendants contained in Paragraph 57.

58.     Defendants, including Paladino, Foley, Bowen, Cassidy, and Valentini, later falsely represented in their written reports and conversations with trial prosecutors the circumstances under which Michael's "confession" was obtained. Defendants, including Paladino, Foley, Bowen, Cassidy, and Valentini, also falsely represented in their written reports and conversations with trial prosecutors that the information in Michael's written "confession" had originated with Michael, when in reality it had all come from Defendants.

**ANSWER:**     Defendant Valentini denies the allegations against him contained in Paragraph 58. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations related to other defendants contained in Paragraph 58.

59.     At the same general time as they were interrogating the other teens, Defendant Officers sought out 17-year-old Terrill Swift at his father's home. The officers falsely informed Terrill that they wanted him to come down to the police station because he was suspected of "hiding someone" of interest to police. Defendant Officers omitted any mention of their true motivation—to interrogate Terrill about Nina Glover's murder.

**ANSWER:**     Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 59.

60.     Terrill's parents and family were not permitted to accompany him. Instead, Defendant Officers deliberately misled his family about where Terrill would be taken, telling his father and uncle that he would be at the station at 35th and Lowe. In fact, Defendants brought Terrill to the Area One station at 51st and Wentworth, and interrogated him for hours outside the presence of a parent, guardian, or attorney.

**ANSWER:**     Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 60.

61.     Terrill repeatedly told the Defendant Officers that he did not know anything about the murder, and that he had nothing to do with the murder. The Defendant Officers ignored his multiple requests that he be allowed to call his mother and an attorney.

**ANSWER:**     Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 61.

62.     Defendant Officers, including Defendants Paladino, Boudreau, and Valadez, fed Terrill details of the Glover murder and instructed him to implicate himself and the other

teenagers in the crime. They also made false promises of leniency, repeatedly assuring Terrill that he could go home if he confessed, and making it clear, explicitly and implicitly, that he would be forced to remain in their custody if he did not. ASA Johnson participated in the interrogation and was present for the taking of Swift's coerced and fabricated statement.

**ANSWER:**     Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 62.

63.     Around the same time, Defendant Officers, including Defendants Foley and Boudreau, picked up 16-year-old Harold Richardson as he was walking home from a friend's house.

**ANSWER:**     Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 63.

64.     Harold had no idea why he was being detained, or what was going on. The Defendant Officers told him, in sum and substance, that they had caught him in front of "the crime scene," and they threatened to take him to the nearby viaduct and kill him. Harold was terrified and did not know what was happening.

**ANSWER:**     Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 64.

65.     At the police station, the Defendant Officers, including Defendants Paladino, Cassidy and Coughlin, interrogated Harold outside the presence of a parent, guardian, or a youth officer. They handcuffed him to the wall of an interrogation room, fed him details of Ms. Glover's murder, and pressured him to implicate himself in the crime.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 65.

66. Harold refused to do so. He did not know Ms. Glover and he knew nothing about Ms. Glover's murder. He told this to the Defendant Officers.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 66.

67. The Defendant Officers made false promises of leniency, assuring him that they would release him if he provided a statement.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 67.

68. ASA Johnson was initially involved in Harold's interrogation, before passing the case off to ASA Valentini. Although Harold never gave a statement to ASA Johnson, Johnson later falsely claimed that Harold had confessed to him. Harold eventually succumbed to Defendants' unlawful pressure by giving an oral admission to ASA Valentini, but, knowing it was false, refused to allow the statement to be reduced to writing. ASA Valentini, ASA Johnson and the other Defendant Officers were all aware that Harold's confession was the product of coercion and was merely a fabricated version of events that had been fed to him by Defendants, including ASA Johnson and Valentini.

**ANSWER:** Defendant Valentini admits that Harold Richardson gave a voluntary oral statement to him. Defendant denies the remaining allegations directed against him contained in

Paragraph 68. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations related to other defendants contained in Paragraph 68.

69.     Defendant Officers used similar coercive tactics with 18-year-old Vincent Thames. They picked him up from his home and transported him to the police station, where he was handcuffed to the wall of an interrogation room. Vincent told Defendant Officers he had nothing to do with the murder but Defendants McCafferty, Cassidy and Paladino threatened that he would get natural life in prison unless he "confessed" to his involvement in Ms. Glover's murder. Frightened by their threats and believing the Defendants' promises that they would release him if he adopted the Defendants' narrative of the crime, Vincent succumbed to their pressure. ASA Johnson participated in Vincent's interrogation and reduced his statement to writing.

**ANSWER:**     Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations related to other defendants contained in Paragraph 69.

70.     As a result of their improper and undue pressure, the Defendants ultimately obtained "confessions" from each of the five juveniles to taking part in the same crime.

**ANSWER:**     Defendant Valentini denies the allegations against him contained in Paragraph 70. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations related to other defendants contained in Paragraph 70.

71.     Given the circumstances under which they were obtained, Defendants, including ASAs Johnson and Valentini, knew that each of the juvenile's statements was not reliable evidence, but was the result of improper pressure, undue coercion, and fabrication. Plaintiff

Michael Saunders, along with the four other teens: Jerry Fincher, Vincent Thames, Terrill Swift, and Harold Richardson, were all innocent of Ms. Glover's murder. They would never have falsely implicated themselves or the other teenagers but for the Defendants' misconduct.

**ANSWER:**   Defendant Valentini denies the allegations against him contained in Paragraph 71. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations related to other defendants contained in Paragraph 71.

72.    On the sole basis of the Defendant Officers' coercions and fabrications, each of the teenagers, including Michael, was charged with first-degree murder and aggravated sexual assault.

**ANSWER:**   Defendant Valentini admits that Plaintiff was charged with first-degree murder and aggravated sexual assault. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 72.

73.    The means employed to secure the false confessions of Fincher, Thames, Richardson and Swift included deceit, intimidation, threats (both explicit and implicit), prolonged isolation from family and friends, and outright physical coercion. Those unlawful means and other exculpatory evidence obtained in the investigation were never disclosed to Michael or his defense counsel, before, during, or after Michael's criminal trial. Furthermore, the Defendants failed to document any of the teenagers' truthful exculpatory statements, and never revealed to anyone that any exculpatory statements had been made.

**ANSWER:**   Defendant Valentini denies the allegations against him contained in Paragraph 73. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations related to other defendants contained in Paragraph 73.

74.     In order to corroborate their false case against Michael and the other four teenagers, which were based entirely on the coerced and fabricated "confessions" from the five teens, Defendant Officers fabricated circumstantial physical evidence.

**ANSWER:**    Defendant Valentini denies the allegations against him contained in Paragraph 74. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations related to other defendants contained in Paragraph 74.

75.     Defendants fabricated a story that became part of the confessions that the teenagers had hit Ms. Glover with a shovel during the assault, and later purchased a mop to clean up blood in the basement. Defendants further fabricated that the teens had thrown the mop and the shovel into a nearby lagoon.

**ANSWER:**    Defendant Valentini denies the allegations against him contained in Paragraph 75. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations related to other defendants contained in Paragraph 75.

76.     In actuality, neither Michael nor any of the other teenagers ever used a shovel to strike Ms. Glover, or disposed of a shovel in the lagoon, because none of them had been involved in the rape or murder of Ms. Glover in any way. Indeed, Ms. Glover was not hit with a shovel at all. Similarly, no mop was ever used to clean Vincent Thames' basement after the rape/murder, or discarded in the lagoon, because Ms. Glover was never raped or murdered in Vincent Thames' basement.

**ANSWER:**    Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 76.

77.     Nevertheless, despite the fact that the details about the shovel and the mop were completely false, Defendant Officers subsequently claimed to have recovered a shovel and a broken mop handle from the lagoon, and further claimed that Terrill Swift had told them where to find the objects. No forensic evidence ever linked these items to the teenaged co-defendants or the Glover murder. Defendants either planted the shovel and mop handle in the lagoon or lied about the circumstances under which they were discovered to make them seem falsely incriminating. Further, Terrill's "identification" of the tools was coerced and concocted by the Defendant Officers.

**ANSWER:**     Defendant Valentini denies the allegations against him contained in Paragraph 77. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 77.

78.     The shovel and broken handle were introduced against Michael at his trial, as evidence that corroborated the State's story of how the murder took place and that explained the lack of other forensic evidence found in the basement.

**ANSWER:**     Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 78.

79.     No forensic evidence ever linked Michael Saunders or any of the other four teens to the crime. In fact, the physical evidence excluded the teenagers.

**ANSWER:**     Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 79.

80.     Reports from forensic labs produced prior to the time of the teenagers' trials revealed that the semen found on Nina Glover's vaginal swab could not have originated from Michael or any of the other four teens. Instead, DNA testing revealed a "single source" of DNA that did not match any of the teenage boys who had been forced to confess to the murder.

**ANSWER:**    Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 80.

81.     The Defendants were aware of this evidence. Nevertheless, the Defendants continued to misrepresent the circumstances under which they had obtained the statements from the five teenagers, concealing the coercion they had used and the fact that the information in the confessions had been fed to the teenagers by the Defendants. The Defendants also failed to investigate other leads—such as Johnny Douglas, a man with a lengthy and violent criminal past who was inexplicably present at the crime scene the morning Nina Glover's body was discovered.

**ANSWER:**    Defendant Valentini denies the allegations against him contained in Paragraph 81. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations related to the other defendants contained in Paragraph 81.

82. In November 1997, Michael stood trial for the rape and murder of Nina Glover.

**ANSWER:**    Defendant admits the allegations contained in Paragraph 82.

83.     The prosecution relied primarily on Michael's fabricated and coerced confession, because no forensic evidence ever linked Michael to the crime. And even though DNA testing excluded Michael, because the DNA did not provide a "hit" to any other person—especially not

to Johnny Douglas, the much-older serial attacker of women on Chicago's South Side, who had been present at the crime scene but falsely claimed to know nothing about Ms. Glover—the prosecution was able to argue that none of the five teenagers ejaculated during the rape of Ms. Glover, and some other person must have had consensual sex with her during the 48-hour period before her murder.

**ANSWER:** Defendant Valentini admits that the State relied on the statement of Plaintiff at his criminal trial. Defendant denies that he fabricated or coerced the statement of Plaintiff. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 83.

84. The State's Attorney prosecuting the case acknowledged that its entire case against Michael rested on the confession. During pretrial proceedings, the ASA told the court "we cannot proceed without this confession" and that, if the confession were suppressed, the state would have "to file a certificate of impairment" because it could not go forward.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 84.

85. As a proximate result of the above-described misconduct on the part of Defendants, Michael was convicted in a bench trial. In explaining his ruling, Judge Sumner stated, "Obviously the whole question comes down to the statement." The Judge further explained his decision by noting that "it's clear what [Michael Saunders] said happened was pretty much the same as what Mr. Richardson said."

**ANSWER:** Defendant Valentini denies the allegations against him contained in Paragraph 85. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations related to the other defendants contained in Paragraph 85.

86. But for the Defendants' misconduct, Plaintiff would have been neither prosecuted nor convicted.

**ANSWER:** Defendant Valentini denies the allegations against him contained in Paragraph 86. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations related to the other defendants contained in Paragraph 86.

87. On December 17, 1997, Michael was sentenced to 40 years in prison.

**ANSWER:** Defendant Valentini denies the allegation in Paragraph 85.

88. On the basis of their confessions, Terrill Swift and Harold Richardson were also convicted after bench trials. Terrill was sentenced to 36 years in prison, and Harold to 40. In light of the outcomes of these trials, which all proceeded before his, Vincent Thames pled guilty and was sentenced to 30 years in prison.

**ANSWER:** Defendant Valentini admits that Terrill Swift and Harold Richardson were convicted after bench trials and that Vincent Thames pled guilty. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 88.

89. Jerry Fincher's "confession" was deemed unreliable and excluded following a suppression hearing. Knowing that left them with no evidence to convict him, the prosecutors dropped all charges against him. Jerry was released in 1998 after having spent 3 ½ years in jail.

31

**ANSWER:** Defendant Valentini admits that the charges against Jerry Fincher were dismissed. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 89.

90. The Defendant Officers' misconduct in this case was not an isolated occurrence. The Chicago Police Department has repeatedly used similar tactics to secure false confessions, often from vulnerable groups such as juveniles or persons with mental limitations, in order to close murder and other serious cases.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 90.

91. At the time of the events leading to Plaintiff's coerced confession and wrongful conviction, members of the Chicago Police Department systematically promoted the malicious prosecution of teenagers and other vulnerable individuals by using abusive and coercive interrogation tactics to force them to confess to crimes they did not commit. Youth are inherently more suggestible, they are vulnerable to manipulation, and they frequently lack the ability to fully understand—let alone assert—their rights during an interrogation.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 91.

92. To secure false confessions, Chicago Police Detectives routinely used the very same tactics that the Defendants employed against Michael and the other teenagers in this case. These tactics include: (a) physical violence; (b) mental intimidation and manipulation; (c) the use of clearly unreliable or coerced informants; (d) the fabrication of confessions; (e) the misleading of parents and denial of parents' access to their children during interrogations; (f) the denial of

access to counsel; (g) the concealment of exculpatory information; (h) false promises of leniency in exchange for "cooperation" in the form of a confession; and (i) the use of other unlawful tactics to secure the arrest, prosecution, and conviction of persons, including teenagers, without regard to their actual guilt.

**ANSWER:** Defendant Valentini denies the allegations against him contained in Paragraph 86. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations related to the other defendants contained in Paragraph 92.

93. There are numerous examples of Chicago Police Officers coercing or fabricating false confessions from juveniles and/or persons with mental limitations during the same time period as the events in this case, resulting in other wrongful prosecutions and convictions. Just as in this case, Chicago Police Department officers would often obtain multiple, interlocking confessions from several individuals in order to better corroborate each confession in the absence of other inculpatory evidence. For example:

a. In 1987, the Chicago Police coerced a false murder confession from 17-year-old Marcellus Bradford and Calvin Ollins, a 14-year-old with mild retardation. Police kept Bradford in custody overnight and abused him repeatedly, by punching him, slapping him, pouring dirty water over his head, denying him the use of the restroom, and hitting him with a book, until he agreed to read a provided statement aloud that falsely implicated himself and two others. Police then used the same coercive tactics with Calvin Ollins, threatening him with physical violence and feeding him false information until he recited a written statement provided by police implicating himself, Bradford, and two other teens, in the murder. These two confessions were

used to implicate two other teens in the murder as well; all four were wrongfully convicted. The four teens were ultimately proven innocent and exonerated by DNA testing.

b. In 1991, Chicago Police including Defendant Boudreau coerced confessions from 6 separate teenagers to the same murder. This included 13-year-old Marcus Wiggins, who Boudreau coerced into signing the confession he had written out for him by beating him and torturing him with an electric shock. Police also denied Wiggins' mother access to her son. A judge later threw out the false confession and all charges against Wiggins were dropped. A judge threw out the confession of one of the other six teens, and the remaining four were acquitted.

c. In 1992, Chicago Police Detectives including Defendant Boudreau secured false confessions from three people implicating themselves in a rape and murder. They coerced 18-year-old Harold Hill to implicate himself and two other men—Dan Young and Peter Williams. Boudreau and Halloran then coerced Young, an illiterate 30-year-old with an IQ of 56, to implicate himself and Hill. The detectives then coerced 19-year-old Williams to do so as well, after handcuffing him to a radiator for hours, denying him access to the bathroom, beating him, and sticking a pistol in his mouth. The case against Williams was later dismissed when it was established that he was in jail at the time of the murder. Hill and Young were wrongly convicted, but ultimately proven innocent by DNA.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 93.

94.    In addition to the two above examples involving Defendant Boudreau, one of the officers who coerced and fabricated the false confessions in this case, there are many other examples of similar misconduct by the Defendant Officers. For example:

a. In 1987, Defendant Foley, who was involved in Michael Saunders' interrogation, worked with other Chicago detectives to obtain a false confession from Frank Bounds to murder. The detectives hit Bounds on the head and tried to kick him in the groin, and threatened to implicate Bounds's girlfriend in the murder if he did not confess.

b. In 1992, Defendants Boudreau and Foley coerced Arnold Day to confess to a murder by isolating him in an interrogation room for hours, choking him, and threatening to throw him out of a window.

c. Also in 1992, Defendants Boudreau and Foley physically assaulted Clayborn Smith, over a period of 37 hours, until he confessed to a murder he did not commit. The detectives grabbed Smith's neck, pulled his hair and finger back, kicked him, and handcuffed him to a wall in the interrogation room.

d. In 1994, Defendants Boudreau and Foley, along with other Chicago detectives, beat 17-year-old Sean Tyler, Michael Taylor, Reginald Henderson, and Antoine Ward into falsely confessing to murder. The detectives beat, kicked and punched Tyler until Tyler vomited blood. They dropped Taylor to the floor, kicked his groin and punched his head. They slapped and choked and interrogated Henderson for over 30 hours. And they held Ward for over 48 hours and refused to let him use the restroom, forcing him to urinate in a desk.

e. In 1994, Defendant Cassidy forced an 11-year-old boy A.M. to confess to murdering an 83-year-old woman. The boy was unlawfully detained in the police station and interrogated outside the presence of his parents or a youth officer. Although A.M. was wrongly convicted on the basis of this confession, that adjudication was later reversed on habeas based on a finding his confession had been coerced.

f. In 1997, Chicago Police, including Defendant Cassidy, forced 13-year-old Jimie Haynes to confess to murder after being held in the station for more than 14 hours without a guardian or youth officer. Prosecutors eventually dropped the charges after the confession was suppressed.

g. In 1998, Chicago Police, including Defendant Cassidy, forced two other young boys, aged 7 and 8, to falsely confess to the murder of an 11-year-old. Later, the two boys were exonerated when forensic testing revealed that a 30-year-old man, Floyd Durr, had left semen on the victim's underwear and was the true perpetrator.

h. In November 1998, Chicago Police, including Defendant Cassidy, coerced Steven Hudson into falsely confessing to a murder, including by beating him, shocking him, and threatening to arrest his girlfriend and take his son away if he did not confess. The statement was eventually suppressed and, as no other evidence implicated Hudson in the murder, the charges dismissed.

i. In 1997, Chicago Police, including Defendant Coughlin obtained a false confession from Robert Wilson for the attempted murder of a woman. Wilson was held in police custody for an extended period of time, physically abused, denied sleep, food and medication, intimidated, and promised leniency if he confessed.

j. In March 1997, Chicago Police, including Defendant Coughlin, coerced another false murder confession from 15-year-old Eric Kittler. Kittler was held for 12 hours, deprived of food and sleep, threatened with physical harm, and told he could go home once he confessed. His mother was not allowed into the interrogation room until he was about to sign the statement. Kittler was later acquitted in a retrial and settled a civil rights suit for $2 million.

36

k. In 1991, Chicago Police, including Defendant Boudreau, interrogated 15-year-old John Plummer for 36 hours, hit him in the face, stomach and side with a flashlight, and denied him any food, until he falsely confessed to murder.

l. In December 1993, Chicago Police, including Defendant Boudreau, "solved" two separate murders with confessions from two mentally retarded juveniles, Fred Ewing and Darnell Stokes, classmates in special-education courses. One expert concluded that Ewing "was unable to comprehend the substance of the confession which he allegedly made." Absent any other evidence connecting them to the crime, both were acquitted despite the confessions obtained by Boudreau.

m. In 1993, Defendant Boudreau and other Chicago Police beat sixteen-year-old Tyrone Reyna into confessing to a murder he did not commit, and then arrested two others, Nicholas Escamilla and Miguel Morales, and Boudreau forced Ecamilla to falsely confess to the murder as well by threatening to send his pregnant wife to jail.

n. Also in the early 1990s, Chicago Police, including Defendant Boudreau, obtained a murder confession from Alfonzia Neal, testifying that Neal waived his rights and signed a statement handwritten by a prosecutor. Experts established that Neal had an IQ in the 40s, well below the dividing line for mental retardation, and that he was incapable of intelligently waiving his Miranda rights. Neal was acquitted notwithstanding his signed confession.

o. In 1995, Chicago Police, including Defendant Boudreau, coerced Derrick Flewellen into signing a confession by interrogating him for more than 36 hours, during which time he was slapped, kicked, punched, and slammed into the wall by Boudreau and other detectives. After

spending almost five years in prison, Flewellen was acquitted of the two murders when DNA tests proved the crime was committed by someone else.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 94.

95.     In addition to the above examples of wrongful convictions, there are numerous other cases during the same time period in which Chicago Police officers used coercive techniques to secure tainted and suspect confessions, including:

a. In January 1993, Chicago Police coerced a false confession from Lafonso Rollins, a 17-year-old special education student, for a series of robberies and sexual assaults of four elderly women. Police held Rollins for 13 hours during which he was beaten, and told he could go home if he signed a prepared false confession. Rollins was convicted primarily due to this confession, but exonerated in 2004 by DNA.

b. In 1994 Chicago Police forced a 15-year-old with a severe learning disability, Leonard Thomas Stafford, to confess to the murder of another teenager. Stafford was questioned without the presence of a guardian. The Illinois Appellate Court ultimately reversed his murder conviction.

c. In 1995, Chicago Police coerced a murder confession from 17-year-old Rashon Harris. Harris was handcuffed to the wall, denied food and drink, and told that if he signed the confession he would be released. He was later acquitted by a jury.

d. In 1996, the Chicago Police beat 17-year-old Mario Hayes into signing a false murder confession. Hayes was later acquitted when he showed it was factually impossible for him to have committed the murder, because he was in jail at the time it occurred.

e. In 1996, Chicago Police coerced a murder confession from 14-year-old Ezekiel McDaniel, after arresting him in the middle of the night. McDaniel was questioned without the presence of a parent, and was slapped, threatened with the barrel of a gun, and told he would not be allowed to leave without signing a prepared handwritten confession. In 2001, the Illinois Appellate Court held that his statement was involuntary and should have been suppressed.

f. In 1997, Chicago Police coerced Don Olmetti, a borderline mentally retarded 16-year-old, into signing a written confession to the robbery and murder of a school teacher. Police held Olmetti for 18 hours, during which time he was beaten by police. In 1999, after Olmetti made charges his confession had been coerced, the charges against him were dismissed for lack of evidence.

g. In 1997, Chicago Police coerced a murder confession from 17-year-old Lanard Guider. The police used physical violence in order to get Guider to confess. When allegations of this arose, charges against Guider were later dropped.

h. In January 1998, Chicago Police coerced a false murder confession from 16-year-old Eddie Huggins. In a statement he signed at 4 a.m., Huggins admitted to stabbing the victim multiple times. But an autopsy later revealed that the victim was never stabbed. A judge ultimately acquitted Huggins of the murder, and criticized law enforcement for letting "the truth get obscured in the process of winning and losing."

i. In January 1999, Chicago Police obtained a false confession from Luster Nelson, an 18-year-old with mental retardation (IQ of 53) for the murders of Mark Hemphill and Steven Bausal. Police claimed that it took Nelson 90 seconds to read his Miranda rights, but when a clinical psychologist asked Nelson to read his rights aloud, he was unable to do so even after trying for over 11 minutes. A judge later threw out the confession and the state dropped all charges against Nelson.

**ANSWER:**   Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 95.

96.     This pattern of misconduct was, or should have been, evident to Chicago Police Department supervisors and policymakers. Between 1991 and 2001, Chicago police obtained confessions in at least 247 murder cases that were eventually thrown out by courts as tainted or failed to secure a conviction. During the same period, Chicago police obtained at least 71 murder confessions from suspects aged 16 and under which were so unconvincing and unsupported by other evidence implicating the suspects that courts threw them out, prosecutors dropped the charges or the juveniles were acquitted at trial. Moreover, these improper coercive practices, including the use of threats and physical violence against juveniles and other vulnerable persons, were employed by a number of separate police officers throughout the Chicago Police Department, openly and notoriously.

**ANSWER:**   Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 96.

97.     In addition, in December, 2001, the Chicago Tribune ran a series on the Chicago Police Department's improper use of coercion to obtain unreliable confessions, including in

40

particular the practice of compelling these unreliable confessions from juveniles, people with mental disabilities, and other vulnerable suspects.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 97.

98.     Despite the notice that Chicago Police Officers were using coercion to obtain false confessions and/or fabricating confessions, which resulted in several wrongful convictions, supervising officers and policymakers turned a blind eye to this behavior, thereby ratifying the misconduct, and/or failed to train or adequately discipline officers, with deliberate indifference to the resulting violations of constitutional rights.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 98.

99.     As a matter of both policy and practice, municipal policy makers and department supervisors condoned and facilitated a code of silence within the Chicago Police Department. In accordance with this code, Chicago Police Detectives refused to report and otherwise lied about misconduct committed by their colleagues, including the misconduct at issue in this case.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 99.

100.     As a result of the City of Chicago's established practice of not tracking and identifying police officers who are repeatedly accused of the same kinds of serious misconduct; failing to investigate cases in which the police are implicated in obtaining coerced and false confessions, as well as wrongful charges and convictions; failing to discipline officers accused of

41

this unlawful conduct; and facilitating a code of silence within the Chicago Police Department, officers (including the Defendants here) have come to believe that they may violate the civil rights of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse consequences. As a result of these policies and practices of the City of Chicago, members of the Chicago Police Department act with impunity when they violate the constitutional and civil rights of citizens, including the youngest and most vulnerable members of society.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 100.

101. The City's failure to train, supervise, and discipline its officers effectively condones, ratifies, and sanctions the kind of misconduct that the Defendant Officers committed against Plaintiff in this case. Constitutional violations such as occurred in this case are encouraged and facilitated as a result of the City's practices and de facto policies, as alleged above.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 101.

102. The City of Chicago and officials within the Chicago Police Department failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Plaintiff's ongoing injuries.

42

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 102.

103. The policies and practices described in the foregoing paragraphs were consciously approved by City of Chicago policymakers who were deliberately indifferent to the violations of constitutional rights described herein.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 103.

104. Throughout his prosecution and incarceration, Plaintiff maintained his innocence and pursued all possible avenues to prove it.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 104.

105. In February 24, 2011, Michael joined Terrill Swift and Harold Saunders in filing a motion for post-conviction DNA testing.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 105.

106. Cellmark Laboratories in Dallas, Texas, conducted the DNA testing and obtained a single male DNA profile from the vaginal swab extracts collected from Ms. Glover post-mortem.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 106.

107.     DNA testing revealed a single male DNA profile, which could not have come from Plaintiff or any of the other teenagers convicted for the crime. Despite the "confessions" claiming that four of the teenagers had intercourse with the victim, the testing revealed that only one person had left DNA in the victim's vagina, and that person could not have been Plaintiff or any of the other four teens.

**ANSWER:**    Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 107.

108.     On May 13, 2011, the Illinois State Police submitted the DNA profile to the Combined DNA Index System (CODIS) database, which returned a match to the DNA profile of Johnny Douglas, the "Maniac," who had a lengthy history of committing similar crimes against other female prostitutes in Chicago, and was inexplicably present, 10 miles from his home, when the body was found in the early morning hours of November 7, 1994.

**ANSWER:**    Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 108.

109.     On May 29, 2011, Michael Saunders, Harold Richardson, Terrill Swift and Vincent Thames filed a joint petition to vacate their convictions. The court granted the joint petition on November 16, 2011. Shortly thereafter, on January 17, 2012, the Cook County State's Attorney's Office stated they would *nolle prosequi* future charges.

**ANSWER:**    Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 109.

110.    On September 14, 2012, the State of Illinois granted Michael a certificate of innocence.

**ANSWER:**    Defendant Valentini admits that Plaintiff was granted a Certificate of Innocence by the Circuit Court of Cook County. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 110.

111.    Michael Saunders spent more than 15 years in prison for a crime he did not commit—over half of his life. He must now attempt to make a life for himself outside of prison without the benefit of nearly two decades of life experiences—including his adolescence and young adulthood—which normally equip adults for that task.

**ANSWER:**    Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 111.

112.    Additionally, the emotional pain and suffering caused by losing these formative years has been substantial. Michael was taken from his family when he was just 15 years old. During his incarceration, he was stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right. He missed out on the ability to graduate from high school with his friends, to share holidays, births, funerals, and other life events with loved ones, the opportunity to have girlfriends, to fall in love, to marry, and to pursue a career, and the fundamental freedom to live his life as an autonomous human being. Several relatives died while he was incarcerated, including, most painfully, his older brother. Michael was denied the opportunity to attend their funerals, and continues to struggle to find a means to grieve.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 112.

113. As a result of the foregoing, Michael Saunders has suffered tremendous damage, including but not limited to physical harm, mental suffering, and loss of a normal life, all proximately caused by Defendants' misconduct.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 113.

WHEREFORE, Defendant Fabio Valentini respectfully requests that this Court enter judgment in his favor and against Plaintiff, Michael Saunders, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

### Count I – 42 U.S.C. § 1983
### Violation of the Fifth and Fourteenth Amendments

114. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Count I was dismissed by the Court on November 13, 2013, and therefore no answer is required.

115. In the manner described more fully above, the Defendants, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, forced Plaintiff to incriminate himself falsely and against his will, in violation of his rights secured by the Fifth and Fourteenth Amendments.

**ANSWER:** Count I was dismissed by the Court on November 13, 2013, and therefore no answer is required.

116.     As described more fully above, the Defendants conducted an unconstitutional interrogation of Plaintiff, which caused Plaintiff to involuntary sign statements implicating himself in the rape and murder of Nina Glover.

**ANSWER:**    Count I was dismissed by the Court on November 13, 2013, and therefore no answer is required.

117.     The false statements written and coerced by the Defendants and attributed to Plaintiff were used against Plaintiff to his detriment in a criminal case. These statements were the only reason that Plaintiff was prosecuted and convicted of the murder of Ms. Glover.

**ANSWER:**    Count I was dismissed by the Court on November 13, 2013, and therefore no answer is required.

118.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:**    Count I was dismissed by the Court on November 13, 2013, and therefore no answer is required.

119. As a result of Defendants' misconduct described in this Count, Plaintiff suffered injuries, including but not limited to loss of liberty, physical harm, and emotional distress.

**ANSWER:**    Count I was dismissed by the Court on November 13, 2013, and therefore no answer is required.

WHEREFORE, Defendant Fabio Valentini respectfully requests that this Court enter judgment in his favor and against Plaintiff, Michael Saunders, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

### Count II – 42 U.S.C. § 1983
### Violation of Due Process

120. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant incorporates his answers to each paragraph of the Complaint as if restated fully herein.

121. As described more fully above, all of the Defendants, while acting individually, jointly, and/or in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

**ANSWER:** To the extent that this paragraph alleges a violation of a generalized due process right to a fair trial, no answer is required as Count II related to a violation of a generalized due process right to a fair trial was dismissed by the Court on November 13, 2013. To the extent that this paragraph alleges a *Brady* violation, Defendant Valentini denies the allegations in Paragraph 121 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 121.

122. In the manner described more fully above, the Defendants individually, jointly, and/or in concert and in conspiracy, fabricated false reports and other evidence which caused the conviction of Plaintiff; this includes fabricating that the written "confession" attributed to Michael Saunders had originated with him, when all information had been fed to him by

48

Defendants, and fabricating and/or planting "evidence" supposedly corroborating these confessions: the shovel and mop handle allegedly recovered from the lagoon.

**ANSWER:** To the extent that this paragraph alleges a violation of a generalized due process right to a fair trial, no answer is required as Count II related to a violation of a generalized due process right to a fair trial was dismissed by the Court on November 13, 2013. To the extent that this paragraph alleges a *Brady* violation, Defendant Valentini denies the allegations in Paragraph 122 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 122.

123. In the manner described more fully above, the Defendants individually, jointly, and/or in concert and in conspiracy, deliberately withheld exculpatory and impeachment evidence—such as the teenagers truthful exculpatory statements, the Defendants' coercion that resulted in the co-defendants' fabricated confessions, and the fact that the allegedly corroborating physical evidence was created by Defendants—from the ASAs assigned to prosecute the case, the court and the defense. By failing to disclose this information, Defendants violated their clearly established duty to report all material exculpatory and impeachment information to a competent authority.

**ANSWER:** To the extent that this paragraph alleges a violation of a generalized due process right to a fair trial, no answer is required as Count II related to a violation of a generalized due process right to a fair trial was dismissed by the Court on November 13, 2013. To the extent that this paragraph alleges a *Brady* violation, Defendant Valentini denies the allegations in Paragraph 123 as they relate to him. Defendant Valentini is without knowledge or

information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 123.

124.    In the manner described more fully above, Defendants individually, jointly, and/or in concert and in conspiracy, deliberately or recklessly ignored exculpatory evidence of which they were aware, and failed to conduct a constitutionally adequate investigation.

**ANSWER:**    To the extent that this paragraph alleges a violation of a generalized due process right to a fair trial, no answer is required as Count II related to a violation of a generalized due process right to a fair trial was dismissed by the Court on November 13, 2013. To the extent that this paragraph alleges a *Brady* violation, Defendant Valentini denies the allegations in Paragraph 124 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 124.

125.    Absent Defendants' misconduct, the prosecution of Plaintiff could not and would not have been pursued, and Plaintiff would not have been convicted.

**ANSWER:**    To the extent that this paragraph alleges a violation of a generalized due process right to a fair trial, no answer is required as Count II related to a violation of a generalized due process right to a fair trial was dismissed by the Court on November 13, 2013. To the extent that this paragraph alleges a *Brady* violation, Defendant Valentini denies the allegations in Paragraph 125 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 125.

126.     Defendants' misconduct directly and proximately resulted in the unjust and wrongful criminal conviction of Plaintiff and his continuing wrongful imprisonment, thereby denying him his constitutional right to a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**ANSWER:**     To the extent that this paragraph alleges a violation of a generalized due process right to a fair trial, no answer is required as Count II related to a violation of a generalized due process right to a fair trial was dismissed by the Court on November 13, 2013. To the extent that this paragraph alleges a *Brady* violation, Defendant Valentini denies the allegations in Paragraph 126 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 126.

127.     As a direct and proximate result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries, including but not limited to loss of liberty, physical harm, and emotional distress.

**ANSWER:**     To the extent that this paragraph alleges a violation of a generalized due process right to a fair trial, no answer is required as Count II related to a violation of a generalized due process right to a fair trial was dismissed by the Court on November 13, 2013. To the extent that this paragraph alleges a *Brady* violation, Defendant Valentini denies the allegations in Paragraph 127 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 127.

128.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

**ANSWER:**     To the extent that this paragraph alleges a violation of a generalized due process right to a fair trial, no answer is required as Count II related to a violation of a generalized due process right to a fair trial was dismissed by the Court on November 13, 2013. To the extent that this paragraph alleges a *Brady* violation, Defendant Valentini denies the allegations in Paragraph 128 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 128.

WHEREFORE, Defendant Fabio Valentini respectfully requests that this Court enter judgment in his favor and against Plaintiff, Michael Saunders, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

## Count III – 42 U.S.C. § 1983
## Failure to Intervene

129.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**     Defendant incorporates his answers to each paragraph of the Complaint as if restated fully herein.

130.     In the manner described above, by their conduct and under color of law, during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

**ANSWER:** Defendant Valentini denies the allegations in Paragraph 130 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 130.

131. As a direct and proximate result of the Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered injuries, including but not limited to loss of liberty, physical harm, and emotional distress. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

**ANSWER:** Defendant Valentini denies the allegations in Paragraph 131 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 131.

132. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

**ANSWER:** Defendant Valentini denies the allegations in Paragraph 132 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 132.

WHEREFORE, Defendant Fabio Valentini respectfully requests that this Court enter judgment in his favor and against Plaintiff, Michael Saunders, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

### Count IV – 42 U.S.C. § 1983
### Conspiracy to Deprive Constitutional Rights

133. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant incorporates his answers to each paragraph of the Complaint as if restated fully herein.

134. After the murder of Ms. Glover, the Defendants, acting within the scope of their employment and under color of law, agreed among themselves and with other individuals to act in concert in order to deprive Plaintiff of his constitutional rights, including his rights to due process and to a fair trial, all as described in the various paragraphs of this Complaint.

**ANSWER:** Defendant Valentini denies the allegations in Paragraph 134 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 134.

135. Additionally, before and after Plaintiff's conviction, Defendants further conspired to deprive Plaintiff of exculpatory information to which he was lawfully entitled and which would have led to either his not being charged, his acquittal, or his more timely exoneration.

**ANSWER:** Defendant Valentini denies the allegations in Paragraph 135 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 135.

136. In this manner, Defendants, acting in concert with other unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

**ANSWER:** Defendant Valentini denies the allegations in Paragraph 136 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 136.

137.     In furtherance of the conspiracy, each of the co-conspirators engaged in and facilitated numerous overt acts, including but not limited to those set forth above—such as fabricating evidence, withholding exculpatory evidence, coercing false confessions, committing perjury during hearing and trials—and was an otherwise willful participant in joint activity.

**ANSWER:**     Defendant Valentini denies the allegations in Paragraph 137 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 137.

138.     As a direct and proximate result of the illicit prior agreement and actions in furtherance of the conspiracy referenced above, Plaintiff's rights were violated, and he suffered injuries, including but not limited to loss of liberty, physical harm, and emotional distress.

**ANSWER:**     Defendant Valentini denies the allegations in Paragraph 138 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 138.

139.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and deliberate indifference to Plaintiff's rights.

**ANSWER:**     Defendant Valentini denies the allegations in Paragraph 139 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 139.

WHEREFORE, Defendant Fabio Valentini respectfully requests that this Court enter judgment in his favor and against Plaintiff, Michael Saunders, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

### Count V – 42 U.S.C. § 1983
### Supervisory Liability

140.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**    Count V was dismissed by the Court on November 13, 2013, and therefore no answer is required.

141.    The unfair trial, wrongful conviction, and continued wrongful detention of Plaintiff were caused by the deliberate indifference and recklessness of supervisory defendants, including but not limited to Defendants Tuldier and Cassidy, when they failed to adequately train and supervise the individual Defendant Officers.

**ANSWER:**    Count V was dismissed by the Court on November 13, 2013, and therefore no answer is required.

142.    Specifically, these supervisory defendants were personally involved in the case against Plaintiff and knew or, in the absence of their deliberate indifference and recklessness, should have known of their subordinates' unconstitutional actions and related misconduct in the case.

**ANSWER:**    Count V was dismissed by the Court on November 13, 2013, and therefore no answer is required.

143.     Furthermore, these supervisory defendants failed to supervise the individual defendants in constitutionally adequate law enforcement practices, particularly those which concerned interviews of suspects and the production of exculpatory evidence, thereby encouraging and/or permitting these employees and other defendants to coerce and fabricate false inculpatory evidence and to withhold exculpatory and impeachment evidence, which caused the constitutional deprivations suffered by Plaintiff.

**ANSWER:**     Count V was dismissed by the Court on November 13, 2013, and therefore no answer is required.

144.     These interview techniques, failures in producing exculpatory evidence, fabrications and other investigative procedures were contrary to accepted methods used by law enforcement agencies. The fact that the defendant supervisors failed to train and supervise their subordinates to ensure that they employed proper investigation procedures demonstrates deliberate indifference and reckless disregard for Plaintiff's constitutional rights.

**ANSWER:**     Count V was dismissed by the Court on November 13, 2013, and therefore no answer is required.

145.     The personal involvement of the defendant supervisors, through their actions and omissions, proximately and directly caused the constitutional deprivations and grievous personal injuries suffered by Plaintiff, including the above-mentioned injuries and damages.

**ANSWER:**     Count V was dismissed by the Court on November 13, 2013, and therefore no answer is required.

146.    The misconduct described in this Count was objectively unreasonable, and was undertaken intentionally, with malice, willfulness, and deliberate indifference to Plaintiff's clearly established constitutional rights.

**ANSWER:**    Count V was dismissed by the Court on November 13, 2013, and therefore no answer is required.

WHEREFORE, Defendant Fabio Valentini respectfully requests that this Court enter judgment in his favor and against Plaintiff, Michael Saunders, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

### Count VI – 42 U.S.C. § 1983
### *Monell Claim*

147.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**    Defendant incorporates his answers to each paragraph of the Complaint as if restated fully herein.

148.    The actions of each of the individual Defendant Officers were undertaken pursuant to a policy, practice and/or custom of the Chicago Police Department, which included:

a. As described above, conducting physically, psychologically, or otherwise illegal or improperly coercive interrogations of witnesses, suspects and arrestees in order to obtain confessions;

b. Using these coercive techniques to obtain confessions from juveniles and teenagers, or other vulnerable persons such as those with mental limitations;

c. Manufacturing, fabricating, and/or using improper suggestive tactics to obtain statements from suspects and witnesses, particularly juveniles or teenagers;

d. Filing false reports, and giving false statements and testimony about the interrogations, confessions, and witness statements, suppressing evidence concerning the interrogations and confessions from trial prosecutors and defense attorneys, pursuing and obtaining prosecutions and imprisonments on the basis of confessions obtained during the interrogations, and otherwise covering up the true nature of the interrogations, confessions, and witness statements;

e. Failing to video and/or audio tape the interrogation or questioning of suspects, arrestees, and witnesses, particularly in the circumstances set forth in (a) through (c), above;

f. Failing to properly train, supervise, discipline, transfer, monitor, counsel, and/or otherwise control police officers, particularly those who were repeatedly accused of physically, psychologically, or otherwise illegally or improperly engaging in coercive questioning and interrogation of witnesses, suspects, and arrestees, of torture and related physical abuse of suspects; of false arrest, wrongful imprisonments, malicious prosecutions, and wrongful convictions; and/or of making false reports and statements. This failure to train, supervise, discipline, transfer, monitor, counsel, and/or otherwise control specifically includes the "repeater" Defendants named herein, including, but not limited to, Defendants Foley, Cassidy, and Boudreau, who have been accused on numerous occasions of such misconduct;

g. The police code of silence, specifically in cases where officers engaged in the violations articulated in paragraphs (a) through (d) above, whereby police officers refused to report or otherwise covered up instances of police misconduct, and/or fabricated, suppressed, and/or destroyed evidence of which they were aware, despite their obligation under the law and

police regulations to so report. This code of silence has also resulted in police officers either remaining silent or giving false and misleading information, and/or testimony during official investigations and Grand Jury proceedings in order to protect themselves and/or fellow officers from internal discipline, civil liability, or criminal charges, and perjuring themselves in criminal cases where they and/or fellow officers have been accused of misconduct.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 148.

149.    The policies and practices described in this Count were maintained and implemented by the City of Chicago with deliberate indifference to Plaintiff's constitutional rights.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 149.

150.    As a direct and proximate result of the City's actions, Plaintiff's constitutional rights were violated and he suffered injuries and damages, as set forth in this Complaint.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 150.

WHEREFORE, Defendant Fabio Valentini respectfully requests that this Court enter judgment in his favor and against Plaintiff, Michael Saunders, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

### Count VII – State Law Claim
### Malicious Prosecution

151.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**    Defendant incorporates his answers to each paragraph of the Complaint as if restated fully herein.

152.    The Defendant Officers accused Plaintiff of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors with the intent of exerting influence and to institute and continue the judicial proceedings.

**ANSWER:**    Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 152.

153.    The Defendant Officers caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

**ANSWER:**    Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 153.

154.     Statements of the Defendant Officers regarding Plaintiff's alleged culpability were made with knowledge that said statements were false and perjured. The Defendant Officers also fabricated evidence by coercing false inculpatory testimony from co-defendants. The Defendant Officers were aware that, as described more fully above, no true or reliable evidence implicated Plaintiff in the Glover strangulation-murder, all inculpatory evidence was coerced and fabricated, and forensic evidence indicated Plaintiff's innocence. Furthermore, the Defendant Officers intentionally withheld from and misrepresented to prosecutors facts that further vitiated probable cause against Plaintiff, as set forth above, and failed to investigate evidence which would have led to the actual perpetrator. The Defendant Officers withheld the facts of their manipulation and the resulting fabrications from Plaintiff.

**ANSWER:**     Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 154.

155.     The misconduct described in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER:**     Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 155.

156.     Plaintiff's conviction was vacated on November 16, 2011, and the prosecution terminated in Plaintiff's favor on January 17, 2012, when the state agreed to *nolle prosequi* future charges. On September 14, 2012, he was granted a Certificate of Innocence by the State of Illinois.

**ANSWER:** Defendant Valentini admits that Plaintiff was granted a Certificate of Innocence by the Circuit Court of Cook County. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations regarding the other defendants contained in Paragraph 156.

157. As a direct and proximate result of this misconduct, Plaintiff sustained, and continues to sustain, injuries as set forth above, including pain and suffering.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 157.

WHEREFORE, Defendant Fabio Valentini respectfully requests that this Court enter judgment in his favor and against Plaintiff, Michael Saunders, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

### Count VIII – State Law Claim
### Intentional Infliction of Emotional Distress

158. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant incorporates his answers to each paragraph of the Complaint as if restated fully herein.

159. The acts and conduct of the Defendants as set forth above were extreme and outrageous. The Defendants' actions were rooted in an abuse of power or authority, and they were undertaken with intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

**ANSWER:** Defendant Valentini denies the allegations in Paragraph 159 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 159.

160. As a direct and proximate result of the Defendants' actions, Plaintiff suffered and continues to suffer severe emotional distress.

**ANSWER:** Defendant Valentini denies the allegations in Paragraph 159 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 159.

WHEREFORE, Defendant Fabio Valentini respectfully requests that this Court enter judgment in his favor and against Plaintiff, Michael Saunders, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

### Count IX – State Law Claim
### Civil Conspiracy

161. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant incorporates his answers to each paragraph of the Complaint as if restated fully herein.

162. As described more fully in the preceding paragraphs, the Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

**ANSWER:** Defendant Valentini denies the allegations in Paragraph 162 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 162.

163. In furtherance of the conspiracy, the Defendants committed overt acts and were otherwise willful participants in joint activity including but not limited to the malicious prosecution of Plaintiff and the intentional infliction of emotional distress upon him.

**ANSWER:** Defendant Valentini denies the allegations in Paragraph 163 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 163.

164. The misconduct described in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER:** Defendant Valentini denies the allegations in Paragraph 164 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 164.

165. As a direct and proximate result of the Defendants' conspiracy, Plaintiff suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

**ANSWER:** Defendant Valentini denies the allegations in Paragraph 165 as they relate to him. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 165.

WHEREFORE, Defendant Fabio Valentini respectfully requests that this Court enter judgment in his favor and against Plaintiff, Michael Saunders, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

### Count X – State Law Claim
### Respondeat Superior

166.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**    Defendant incorporates his answers to each paragraph of the Complaint as if restated fully herein.

167.    In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers were members of, and agents of, the Chicago Police Department, acting at all relevant times within the scope of their employment and under color of law.

**ANSWER:**    Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 167.

168.    Defendant City of Chicago is liable as principal for all torts committed by its agents.

**ANSWER:**    Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 168.

169.    In committing the acts alleged in the preceding paragraphs, Defendants Johnson and Valentini were members of, and agents of, the Cook County State's Attorney's Office, acting at all relevant times within the scope of their employment and under color of law.

**ANSWER:** Defendant Valentini admits that he was an Assistant State's Attorney employed by the Cook County State's Attorney's Office at all relevant times acted within the scope of his employment. Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 169.

170.    Defendant Cook County is liable as principal for all torts committed by its agents.

**ANSWER:** Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 170.

WHEREFORE, Defendant Fabio Valentini respectfully requests that this Court enter judgment in his favor and against Plaintiff, Michael Saunders, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

### Count XI – State Law Claim
### 745 ILCS 10/9-102
### Claim Against Defendants City of Chicago and Cook County

171.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant incorporates his answers to each paragraph of the Complaint as if restated fully herein.

172.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

**ANSWER:** Defendant admits the allegations in Paragraph 172.

173.    The Defendant Officers are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

**ANSWER:**    Defendant Valentini is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other defendants contained in Paragraph 173.

174.    Defendant Cook County was at all times material to this complaint the employer of Defendants Johnson and Valentini, and is therefore responsible for any judgment entered against Defendants Johnson and Valentini and for any judgment entered against him during said employment with the County, making the County a necessary party to this complaint.

**ANSWER:**    Defendant Valentini admits that Cook County is a governmental entity within the State of Illinois and that it is a necessary party to this lawsuit in that it may have a duty to indemnify Defendant Valentini and Defendant Johnson. Defendant Valentini denies the remaining allegations contained in Paragraph 174.

WHEREFORE, Defendant Fabio Valentini respectfully requests that this Court enter judgment in his favor and against Plaintiff, Michael Saunders, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**
**Absolute Prosecutorial Immunity**

At all relevant times, Defendant Valentini was assigned to the felony review unit of the Cook County State's Attorneys' Office and, in this capacity, evaluated whether criminal charges should have been filed against Plaintiff.  When Defendant Valentini spoke with suspects, took

statements, and ultimately determined whether criminal charges should be approved, he performed acts toward initiating a prosecution and presenting the State's case. Because the conduct complained of on the part of Defendant Valentini arises out of the evaluation of evidence and taking statements for the purpose of initiation and prosecution of criminal charges, Plaintiff's claims are barred on the basis of absolute prosecutorial immunity.

## SECOND AFFIRMATIVE DEFENSE
### Qualified Immunity

At all relevant times, Defendant Valentini was an Assistant State's Attorney assigned to the felony review unit of the Cook County State's Attorney's Office. To the extent any of his actions are not protected by absolute prosecutorial immunity, they are protected by qualified immunity as his actions were at all times proper in light of clearly established law.

## THIRD AFFIRMATIVE DEFENSE
### Sovereign Immunity

Plaintiff's claims against Defendant Valentini are really claims against a State official based upon his actions as an Assistant State's Attorney, functions that fall within the scope of his employment and authority as an Assistant State's Attorney.

Plaintiff's claims against Defendant Valentini relate to the initiation of charges against, and the criminal prosecution of, Plaintiff for the rape and murder of Nina Glover. The State's Attorney is the constitutional officer vested with exclusive discretion in the initiation and management of a criminal prosecution. The prosecution of Plaintiff's case is, therefore, well within the scope of the State's Attorney's authority. The Illinois Court of Claims has sole and exclusive jurisdiction over Plaintiff's state law claims against Defendant Valentini.

## FOURTH AFFIRMATIVE DEFENSE
### Statute of Limitations

Plaintiff's §1983 claims in Counts II, III and IV accrued more than two years prior to the filing of Plaintiff's Complaint and, thus, these claims are time barred. Plaintiff's state law claims for intentional infliction of emotional distress (Count VIII) and state law conspiracy arising out of intentional infliction of emotional distress (Count IX) accrued more than two years prior to the filing of plaintiff's complaint and, thus, these claims are time barred.

## FIFTH AFFIRMATIVE DEFENSE
### Failure to Mitigate Damages

Plaintiff has failed to mitigate the damages he claims to have sustained.

WHEREFORE, Defendant Fabio Valentini respectfully requests that this Court enter judgment in his favor and against Plaintiff, Michael Saunders, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

## JURY DEMAND

Defendant Fabio Valentini hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully Submitted,

ANITA ALVAREZ
State's Attorney of Cook County

By:     /s/ Donald J. Pechous
        Donald J. Pechous
        Lisa M. Meador
        Thomas E. Nowinski
        Assistant State's Attorneys
        500 Richard J. Daley Center
        Chicago, IL 60602
        (312) 603-5440