IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL SAUNDERS, | ) | |
|     Plaintiff, | ) | No. 12-cv-09158 |
| v. | ) | |
| | ) | Hon. Robert M. Dow, Jr. |
| CITY OF CHICAGO, *et al.* | ) | Magistrate Judge Sheila Finnegan |
| | ) | |
|     Defendants. | ) | |

| | | |
|---|---|---|
| VINCENT THAMES, | ) | |
|     Plaintiff, | ) | No. 12-cv-09170 |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, *et al.* | ) | Hon. Robert M. Dow, Jr. |
| | ) | Magistrate Judge Sheila Finnegan |
|     Defendants. | ) | |

| | | |
|---|---|---|
| HAROLD RICHARDSON, | ) | |
|     Plaintiff, | ) | No. 12-cv-09184 |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, *et al.* | ) | Hon. Robert M. Dow, Jr. |
| | ) | Magistrate Judge Sheila Finnegan |
|     Defendants. | ) | |

**PLAINTIFFS MICHAEL SAUNDERS, VINCENT THAMES, AND
HAROLD RICHARDSON'S JOINT MOTION TO REOPEN THE DEPOSITION OF
FABIO VALENTINI, AND TO COMPEL DOCUMENTS FROM
<u>VALENTINI AND THE COOK COUNTY STATE'S ATTORNEY'S OFFICE</u>**

NOW COME Plaintiffs Michael Saunders, Harold Richardson, and Vincent Thames, by and through their respective counsel, who respectfully move pursuant to Federal Rules of Civil Procedure 26, 30, 34, and 45, to reopen deposition testimony and to compel the production of documents from Defendant Assistant State's Attorney Fabio Valentini, and to compel the production of documents from the Cook County State's Attorney's Office (CCSAO). In support, Plaintiffs state as follows:

1

## INTRODUCTION

This civil rights case arises out of the wrongful convictions of Plaintiffs Michael Saunders, Harold Richardson, Vincent Thames, and Terrill Swift,[1] for the November 1994 rape and murder of Nina Glover, a crime they did not commit. Plaintiffs were exonerated in state court in large part because the DNA profile on the vaginal swab recovered from the victim excluded all of them and instead matched a serial rapist and murderer with no connection to any Plaintiff. Plaintiffs have alleged that their wrongful convictions, and the over 16 years they unjustly spent in prison, were the result of unconstitutional misconduct, including fabrication of inculpatory statements, by Chicago Police Detectives and Assistant State's Attorneys.

This motion seeks to compel discovery from one of the Defendants in this case, Assistant State's Attorney (ASA) Fabio Valentini. In March 1995, Defendant Valentini, then a felony review attorney, reported that then 15-year-old Plaintiff Michael Saunders confessed to the Glover rape and murder, implicating himself and the other Plaintiffs, all of whom were teenagers at the time. Defendant Valentini wrote out an eight–page handwritten statement that he asserted accurately summarized Plaintiff Saunders' confession. Plaintiff Saunders, however, denies ever giving any statement to Defendant Valentini, and has consistently asserted his innocence. And as DNA testing proved years later, the statement Defendant Valentini wrote out was completely false—an unrelated man in his thirties, Johnny Douglas, raped and murdered Nina Glover. Douglas, nicknamed the "maniac," had a lengthy and violent criminal history, and had committed several other sexual assaults and murders strikingly similar to the Glover homicide. He was even present at the crime scene when officers discovered Ms. Glover's body, but falsely claimed to know nothing. Despite the fact that DNA and other evidence proves Johnny Douglas murdered Ms. Glover, the false confession Defendant Valentini wrote for Michael Saunders

---

[1] Mr. Swift's case is pending in Illinois state court.

contains nonpublic details about the crime that Plaintiff Saunders and the other Plaintiffs could not have known, and tracks the false confessions attributed to the other Plaintiffs, telling a story about a rape and murder that never happened.

Defendant Valentini's involvement in this case is not limited to his work in March 1995 as a felony review prosecutor. In 2011, when Plaintiffs were still in prison and Johnny Douglas was identified as the source of the semen on the vaginal swab collected from Nina Glover, the Cook County State's Attorney's Office (CCSAO) launched a reinvestigation into the case. By this time, Defendant Valentini had risen through the ranks of the CCSAO and was now the Chief of the Criminal Prosecutions Bureau, which leads reinvestigations into post-conviction innocence cases, including this one. The reinvestigation into this case—conducted by the State's Attorney's Office, not the police—included interviewing various witnesses, ordering additional forensic testing, reanalyzing old evidence, and developing additional evidence. During his deposition Defendant Valentini also acknowledged that he personally participated in meetings and had discussions with others in his Bureau about the reinvestigation. And multiple reports, other documents, and emails were generated within the State's Attorney's Office that directly related to the Glover homicide and the issues at the heart of this civil rights lawsuit.

Despite the striking evidence of innocence, however, Defendant Valentini's Bureau opposed Plaintiffs' motions to vacate their convictions. Their convictions were vacated in 2011 over the ASA's objections. Defendant Valentini's Bureau then moved to dismiss the indictment rather than retry the case. But Defendant Valentini's Bureau still opposed Plaintiffs' petitions for a certificate of innocence, which were also granted in 2012 over the ASA's objections. And in this civil rights lawsuit, despite the overwhelming evidence of innocence, some of the named Defendants have taken the position that the Plaintiffs are actually guilty.

It is against this background that Defendant Valentini, during his deposition, refused to answer questions about his own knowledge and opinions about the case as well as what was learned from and discussed about this case during the reinvestigation, which Valentini acknowledged is now completed and closed, citing the deliberative process privilege. Moreover he has refused to turn over any of the documents generated in the reinvestigation, claiming, surprisingly, that the documents are not within his control.

Indeed, Defendant Valentini asserted the privilege so broadly that many of the questions he refused to answer were independent of the reinvestigation itself. For example: How does Defendant Valentini explain why Michael Saunders voluntarily confessed to him, as he claimed happened, when DNA proves that he was completely innocent? How does Defendant Valentini explain how all of the Plaintiffs' confessions provide an interlocking account of how they raped and killed Nina Glover together, if none of the Plaintiffs committed the crime and the story the confessions tell never happened? Does Defendant Valentini believe Johnny Douglas is guilty, or despite the DNA still have belief in Plaintiffs' guilt? If so, why?

In addition, Plaintiffs asked for information about facts that the reinvestigation, led by Defendant Valentini's Bureau, may have uncovered: What evidence was developed about guilt or innocence, including evidence relating to Johnny Douglas? And Plaintiffs sought to question Defendant Valentini on his personal involvement in the reinvestigation and post-conviction decisions, in order to explore crucial issues for this civil rights case, including whether and to what extent a conflict of interest existed—given that Valentini, who was personally involved in taking the confessions, was the head of the Bureau running the reinvestigation into the case years later—and questions related to intent, bias, bad faith, and even ongoing misconduct and cover up. For example: What role did Defendant Valentini play in the decisions to oppose

4

vacatur and a certificate of innocence? Why had his office opposed this case when it had not opposed vacatur in another case at about the same time, involving substantially similar facts?

In addition to requesting reinvestigation documents from Defendant Valentini, Plaintiffs also served Defendant Valentini's employer, the CCSAO, which is not a party in this case, with a subpoena. The CCSAO, however, also refused to produce the documents, citing the deliberative-process and work-product privileges.

Although the parties have repeatedly conferred about this issue, Defendant Valentini and the CCSAO stand on their objections. Plaintiffs now move to compel. Plaintiffs respectfully request that the Court order Defendant Valentini to produce the withheld documents and grant Plaintiffs an additional two hours to question Defendant Valentini on the improperly foreclosed topics and withheld documents. For the reasons explained herein, neither Defendant Valentini nor the CCSAO have met their burden to show that the information and documents sought are privileged; even if they were to do so, Plaintiffs have a particularized need that requires their disclosure in this case.

## ARGUMENT

I. **Defendant Valentini's Deposition Should Be Reopened To Allow Plaintiffs To Inquire Into Defendant Valentini's Misconduct—Which In No Way Implicates a Deliberative Process—As Well As the Reinvestigation of the Glover Homicide and the Underlying Post-Conviction Proceedings, as Neither Topic is Protected by the Deliberative Process Privilege.**

To fall within the deliberative process privilege, information "must relate to the formulation or exercise of agency policy-oriented judgment." *Allen v. Chicago Transit Authority*, 198 F.R.D. 495, 502 (N.D. Ill. 2001). "The theory behind the privilege is that '[s]ince frank discussion of legal and policy matters is essential to the decision making process of a governmental agency, communications made prior to and as a part of an agency determination are protected from disclosure.'" *Evans v. City of Chicago*, 231 F.R.D. 302, 316 (N.D. Ill. 2005)

5

(quoting *Becker v. IRS*, 34 F.3d 398, 403 (7th Cir. 1994)). However, because the benefits of the deliberative process privilege are "'at best indirect and speculative,' [the privilege] must be strictly confined 'within the narrowest possible limits consistent with the logic of [its] principles.'" *United States v. Board of Education of City of Chicago*, 610 F. Sup. 695, 689 (N.D. Ill. 1985) (quoting *In re Grand Jury Proceedings*, 599 F.2d 1224, 1235 (3d Cir. 1979)).

To determine whether or not the privilege applies, courts engage in a "two-part analysis":

> First, the court must decide whether the government has shown that the privilege applies to the documents the government seeks to protect. Then, if the government meets its threshold burden of showing that the privilege applies, the litigant has the burden of showing that it has a particularized need for the documents.

*Evans*, 231 F.R.D. at 316 (quotation omitted).

### A. The Deliberative Process Privilege Does Not Apply

*1. Valentini cannot escape questions about his own misconduct in this case and factual matter by claiming a deliberative process privilege.*

First, a large category of questions Plaintiffs attempted to ask Defendant Valentini, which he refused to answer, relate to his own knowledge, beliefs and opinions about the Nina Glover homicide, Plaintiffs' guilt, the confessions he took, and the effect the DNA evidence and Johnny Douglas has on the case.[2] Valentini's own current knowledge, beliefs and opinions cannot be covered by the deliberative process privilege, as they are "neither pre-decisional, deliberative, nor related to a particular policy." *United States v. Lake Cnty. Bd. of Comm'rs*, 233 F.R.D. 523, 528 (N.D. Ind. 2005). And his knowledge, beliefs and opinions are directly relevant to Plaintiffs' claims against Defendant Valentini: his explanation for what happened—or inability to provide a reasonable explanation other than his own misconduct—goes directly to the heart of the case. It

---

[2] For example, *see* Ex. A (Valentini Dep. Tr.) at 255–56 (refusing to explain what factors in his mind counsel toward thinking a new jury that heard evidence of Johnny Douglas would reach a different result, and vice versa); 289–90 (refusing to explain what factors caused him to change his own mind from believing Michael Saunders was guilty to not being sure); and 551 (refusing to answer what would explain Mr. Saunders giving the statement that Valentini attributes to him and yet being innocent).

6

is also evidence of Defendant Valentini's intent, bias, and bad faith. Defendant Valentini cannot escape answering difficult questions about his own misconduct by claiming deliberative process privilege.

In addition, "[t]he privilege does not extend to purely factual information that can be disclosed without revealing the deliberative process." *U.S. S.E.C. v. Sentinel Mgmt. Grp., Inc.*, No. 07 C 4684, 2010 WL 4977220, at *5 (N.D. Ill. Dec. 2, 2010) (quotation omitted). "To be considered 'deliberative,' a document should reflect policy or decision-making processes, rather than purely factual or investigative matters." *Id.* at *3; *see also Bobkoski v. Board of Educ.*, 141 F.R.D. 88, 91 (N.D. Ill. 1992) ("[T]he privilege only protects expressions of opinion or recommendations; it does not protect purely factual material."). Factual information is not privileged simply because it was compiled or obtained in the course of a deliberative process. *See, e.g.*, *U.S. S.E.C.*, 2010 WL 4966220, at *5 (requiring disclosure of portions of deliberative documents that contain purely factual information). Thus, the privilege should not prevent Defendant Valentini from testifying about facts he learned about the Nina Glover reinvestigation relating to Johnny Douglas,[3] nor would it prevent disclosure of any other information or documents relating to witness interviews or other facts gathered during the reinvestigation. *See, e.g.*, *Stevens v. United States Dep't of Homeland Sec.*, No. 13 C 03382, 2014 WL 5796429, at *12 (N.D. Ill. Nov. 4, 2014) (interview notes compiled during internal investigation not privileged).

---

[3] For example, Plaintiffs asked Defendant Valentini the following questions, all of which were objected to: "Q. So you became aware, did you not, that Johnny Douglas was the sole source of the semen recovered from Ms. Glover postmortem, correct? . . . Q. Did you become aware at some point that Johnny Douglas was nicknamed The Maniac?" (Ex. A at 196–97); "Q. Okay. Okay. But you saw information on Johnny Douglas. Did the information that you saw include the fact, okay, that Johnny Douglas' DNA matched the sperm DNA recovered from the deceased Ms. Glover in the postmortem autopsy?" (*Id.* at 201); "Q. Okay. And during that reinvestigation which involved Johnny Douglas, did you learn, okay, that the only sperm DNA recovered from Nina Glover postmortem came from Johnny Douglas?" (*Id.* at 206).

> 2. *Valentini cannot invoke the deliberative process privilege if he did not participate in a deliberative process.*

Plaintiffs also note that it is not clear that Defendant Valentini can invoke the deliberative process privilege at all. Although he repeatedly asserted the privilege at his deposition and testified that he had taken part in discussions reviewing this case between 2011 and 2014, including discussions with State's Attorney Anita Alvarez, *see* Ex. A at 171, 195, 224–25, after he was questioned about whether he thought participating in the reinvestigation and post-conviction decisions was a conflict of interest given his involvement in taking the confessions, *id.* at 275–76; 283, Defendant Valentini testified that he did *not* actually participate in the decision to oppose the motion to vacate, the decision to dismiss the indictment, or in the process that led to the decision to oppose the certificate of innocence. *Id.* at 284–85. If he did not take part in a deliberative process, any information he has about the reinvestigation and post-conviction cannot relate to "the decision-making process of a governmental agency," *Evans*, 231 F.R.D. at 316, as required to invoke the privilege.

> 3. *The deliberative process privilege does not apply because Defendant Valentini's intent and misconduct are at issue.*

Even if Valentini took part in a deliberative process, "cases have recognized an exception to the deliberative process privilege where intent is central to proving a claim." *Lewis v. Phillips*, No. 10-CV-3163, 2012 WL 5499448, at *2 (C.D. Ill. Nov. 13, 2012); *see also Lake Cnty. Bd. of Comm'rs*, 233 F.R.D. at 527 ("[T]he dominant view is that . . . the deliberative process privilege does not apply when the government's intent is at issue."). Thus, the "deliberative process privilege yields 'when government misconduct is the focus of the lawsuit.'" *Id*. "If a party can produce 'some evidence,' including circumstantial evidence, that the government had improper motivations, the government misconduct exception allows the party to conduct discovery on the question of intent." *Id.* (citation omitted).

8

As explained above, Mr. Valentini is a named defendant in this civil rights suit. He maintains that Plaintiff Saunders voluntarily confessed to him, but DNA and other evidence prove that Plaintiff Saunders and the other Plaintiffs are innocent. This case involves allegations that Defendant Valentini fabricated evidence; his intent and misconduct are clearly at issue. Defendant Valentini's deposition revealed additional evidence of improper motivation: as noted above, after acknowledging that he had an interest in not having the confessions be found to be fabricated, Ex. A at 283, he changed course and tried to distance himself from participation in the post-conviction decisions. *Id.* at 285.

Defendant Valentini should not be permitted to shield his answers to these questions—which explore his involvement in Plaintiffs' criminal cases, and his intent, bias, bad faith, and ongoing misconduct and cover-up—under the deliberative-process privilege, when his involvement in Plaintiffs' criminal cases is at the heart of these civil rights claims.

> 4. *The privilege does not apply to purely factual matter, positions that were ultimately adopted by the agency, or information that has already been disclosed.*

Even if Defendant Valentini can assert the privilege, it would not cover certain information. As explained previously, factual matter would not be covered. *See, e.g.*, *U.S. S.E.C.*, 2010 WL 4966220, at *5 (requiring disclosure of portions of deliberative documents that contain purely factual information).

Nor does the privilege "protect opinions and recommendations that were adopted as the agency's final position." *Id.* "[E]ven if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Id.* (quoting *Coastal*, 617 F.2d at 866). The CCSAO took public, formal positions to oppose the Plaintiffs' motions to vacate, to *nolle*

9

*prosequi* the charges, and to oppose Plaintiffs' petition for a certificate of innocence. The deliberative process privilege cannot prevent Defendant Valentini from being questioned about or discussing those opinions or recommendations, even in their pre-decision form.

In addition, Defendant Valentini and the CCSAO have already released some information relating to the reinvestigation of the Glover homicide. In the course of this case, counsel for Valentini disclosed at least four pages of investigative memoranda relating to the post-conviction reinvestigation. During the post-conviction proceedings, the CCSAO disclosed other investigative memoranda that it has not produced in the course of this civil case. Information that has already been disclosed cannot be subject to a deliberative process privilege. *See Lewis*, 2012 WL 5499448, at *2 (finding privilege did not apply, noting "some of the information" was already disclosed).

### B. Even if the Deliberative Process Privilege Applies, Plaintiffs Have A Particularized Need For the Information.

Even where the deliberative process privilege applies,[4] it is not absolute: it can be overcome if the party seeking discovery shows sufficient need. *Board of Education of City of Chicago*, 610 F. Sup. at 689; *Evans*, 231 F.R.D. at 316.

"In undertaking such an analysis, the court balances the plaintiff's need for disclosure against the government's need for secrecy, considering such factors as:"

> (1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose as the documents sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which disclosure of the documents sought would tend to chill future deliberations within government

---

[4] In order for Defendant Valentini to make a threshold showing the privilege applies, "three things must happen:" (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents.
*Evans*, 231 F.R.D. at 316 (quotation omitted). Defendant Valentini has not met any of these requirements.

>agencies, that is would hinder frank and independent discussion about governmental policies and decisions.

*Evans*, 231 F.R.D. at 316 (quotation omitted).

This Court's analysis in *Evans* is instructive. There, as in this case, a plaintiff was convicted of rape and murder and later exonerated, and then brought suit against police officers he alleged had framed him. In *Evans*, however, the plaintiff's exoneration occurred through a pardon by the Governor's office. Parties in the civil suit sought discovery related to the pardon decision from the Governor and the Illinois Prisoner Review Board. Although both entities asserted the deliberative-process privilege, the Court, applying the five-part balancing test, held that the material must be disclosed.

The balance favoring disclosure in this case is even stronger. First, as in *Evans*, the reinvestigation of the Glover homicide and the post-conviction proceedings are obviously relevant. "The fundamental premise of [Plaintiffs'] claim is that [Plaintiffs are], in fact, innocent of those crimes for which [they were] convicted." *Evans*, 231 F.R.D at 309. Information the CCSAO developed during the reinvestigation relating to the homicide, Johnny Douglas, and the Plaintiffs are directly relevant to questions of innocence—especially in light of some Defendants in this case continuing to assert Plaintiffs' guilt. In addition, the quality of the reinvestigation and the decision of the CCSAO to oppose Plaintiffs' motion to vacate and petition for a certificate of innocence are relevant to issues relating to Defendant Valentini's bias, bad faith, misconduct, intent, and impeachment, especially given the conflict of interest identified previously. And as in *Evans*, this information is not available from any other source. *Id.* Only the State's Attorney's Office conducted the reinvestigation, not the police.

11

Third, a factor that pointed against disclosure in *Evans* actually points toward disclosure here. In *Evans*, the Governor was not a party; here, Defendant Valentini is. His conduct and intent is directly at issue. *Id.*

Fourth, just as in *Evans*, the "seriousness of this litigation, and the issues involved in it, are obvious"; they "strike[] at the heart of the integrity of our criminal justice system." *Id.* The fact that these allegations are "among the most serious charges that can be leveled against law enforcement," points toward a finding of particularized need. *Id.*

Finally, disclosure would not hinder CCSAO decision-making so as to warrant invoking the privilege. The CCSAO is bound by its ethical obligations to fully evaluate evidence in each of its cases, and make decisions to join or oppose motions to vacate in the interests of justice. "The duty of a public prosecutor or other government lawyer is to seek justice, not merely to convict." Rule 3.8(a) of the Illinois Rules of Professional Conduct. To the extent disclosure in this case affects decision-making at all, it may have the desirable effect of freeing the process from conflicts of interest, by discouraging the CCSAO from allowing prosecutors who were involved in the original criminal case to take part in post-conviction decisions.

## II. Defendant Valentini Should Produce All Documents that Relate to the Reinvestigation and Post-Conviction Proceedings Within His Control.

In addition to refusing to respond to questions at his deposition, Defendant Valentini has withheld documents relating to the reinvestigation and post-conviction proceedings on the ground that they are not in his custody or control.[5]

---

[5] Early in this case, Plaintiffs served request for production of documents on defendants, including Defendant Valentini, requesting all documents relating to the Plaintiffs "with respect to the investigation and prosecution of Nina Glover's murder, including through and beyond the post-conviction proceedings and exonerations." *See* Ex. B (March 8, 2013 requests). Although Plaintiffs had received thousands of pages in discovery from counsel for Defendant Valentini, in early December 2014, while Plaintiff's counsel was preparing to take the deposition of Defendant Valentini, Plaintiffs realized they had never received a written response from Defendant Valentini to the requests. In addition, although the State's Attorney's production included copies of post-conviction filings and a few pages of reinvestigation memoranda, Plaintiffs were concerned that the documents

12

That position has no merit. It is "well-settled that a party need not have actual possession of the documents to be deemed in control of them." *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 542 (N.D. Ill. 2004). "A party has control or custody of a document or thing when he 'has the legal right to obtain the document, even though in fact he has no copy.'" *Engel v. Town of Roseland*, 2007 WL 2903196, at *3 (N.D.Ind. Oct.1, 2007) (quoting 8 C. Wright & A. Miller, Federal Practice and Procedure, § 2210, p. 621 (1970)).

At his deposition, Defendant Valentini acknowledged that the request for production directed to him encompassed the reinvestigation and post-conviction material. Ex. A at 187–88. He also acknowledged that, as Chief of the Bureau of the CCSAO that oversees reinvestigations and post-conviction proceedings, there is no legal or administrative impediment he is aware of to his accessing emails, *id.* at 190–91, or accessing reinvestigation and post-conviction documents. *Id.* at 186. Specifically, he recalled receiving at least one typed document by ASA Mark Ertler about this case and one email from ASA Ertler. *Id.* at 149, 185. He testified that he would have access to the reinvestigation memos that Plaintiffs received during the post-conviction process. *Id.* at 185–86. The fact that these documents, and others, may be located within the offices of Defendant Valentini's employer, the CCSAO, and may even have been generated by other individuals within the CCSAO, is of no matter. *See Dobbey v. Randle*, No. 10 C 3965, 2014 WL 1364428, at *1 (N.D. Ill. Apr. 7, 2014) ("The fact that a document is generated by Dr. Zhang's employer, Wexford Health Sources, Inc., does not do away with Dr. Zhang's obligations under

---

disclosed did not reflect the volume of documents that existed, such as witness interviews, memoranda summarizing the facts of the case and evaluating the post-conviction claims of innocence, and emails and other correspondence. Plaintiffs immediately brought this to defense counsel's attention and several days later, on December 5, 2014, held a Rule 37 conference.

At that conference, counsel for Defendant Valentini took the position that any documents relating to the reinvestigation and post-conviction proceeding were not in his custody or control, and must be obtained through a subpoena to the CCSAO rather than a request to Defendant Valentini individually. Defendant Valentini's response to Plaintiff's request objected only that the request was overbroad, unduly burdensome, and ambiguous, and then asserted that he had no responsive documents. *See* Ex. C.

the Federal Rules of Civil Procedure to produce documents within his possession, custody or control."). In addition, the documents themselves may contain impeachment material or statements of Defendant Valentini, which are discoverable and admissible evidence as statements of a party-opponent.[6]

Plaintiffs request an additional two hours to depose Defendant Valentini with respect to the topics he refused to answer on the basis of deliberative process privilege and the withheld documents, in addition to the approximately one hour of time that Plaintiffs reserved to question Defendant Valentini about those topics.[7] The time Plaintiffs reserved is not sufficient time remaining, given that Plaintiffs had to use significant time during the prior deposition to ask questions that Defendant Valentini did not answer, and given that the time was taken up by lengthy objections made by defense counsel. An additional two hours would bring the total deposition time Plaintiffs seek to three hours, and the total elapsed time for Defendant Valentini's deposition to 12 hours.

---

[6] Defendant Valentini has not asserted that any documents are protected by privilege, nor has he attempted to make any showing to justify assertion of a privilege. To the extent he now attempts to do so, this Court should find that those objections are waived. *See* Fed. R. Civ. P. 26(b)(5); *Ritacca v. Abbott Labs.*, 203 F.R.D. 332, 335 (N.D. Ill. 2001). Even if not waived, however, the privilege would fail for the same reasons explained above in Section I that the deliberative-process privilege does not apply.

[7] Defendant Valentini's deposition was originally scheduled for 10 hours, like all party depositions in this case, given the number of parties involved and complexities of the issues. Plaintiffs ended the deposition after approximately 9 hours had elapsed, stating on the record that they reserved the remainder of the time "to bring back this witness should the Court allow it for two purposes":

> One, if the Court orders you to produce the reinvestigation file beyond the few pages you've already produced and to question him about that, and also to question him about all the areas that you instructed him not to answer my questions concerning his meetings from January 1st, 2011, through 2014 with other people in his office concerning the reinvestigation of the Glover murder and the motions that were filed to vacate the conviction and secure a certificate of innocence.

Ex. A at 553.

**III.    The CCSAO, Which Is Not a Party in This Case, Also Has An Obligation To Provide Documents Relating to the Reinvestigation and Post-Conviction Proceedings In Response to Plaintiffs' Subpoena, As Those Documents Are Not Protected By Deliberative-Process or Work-Product Privilege.**

   **A.  Background**

In addition to seeking information and documents relating to the reinvestigation and post-conviction from Defendant Valentini, Plaintiffs sent a subpoena to the CCSAO, which is not a party in this case, in April 2014 that included a request to provide, "To the extent not previously requested, any and all records and documents in the possession, custody, or control of the State's Attorney's Office relating to the Nina Glover homicide investigation and resulting prosecutions." Ex. D (Request 9). The CCSAO responded to this request by directing Plaintiffs to "see documents produced responsive to discovery requests." Ex.E (Response to Request 9).

At the parties' Rule 37 conference prior to Defendant Valentini's deposition, defense counsel took the position that the language of Plaintiffs' April 2014 request did not include the reinvestigation and post-conviction materials, which is why they were not produced. Although Plaintiffs disagreed with this position, Plaintiffs sent another subpoena with additional requests making it very clear that the requests encompassed the reinvestigation and post-conviction material. *See* Ex. F. After unnecessary delay,[8] the CCSAO finally responded to the new subpoena on January 5, 2015, asserting the deliberative process privilege and work product privileges over production of the reinvestigation and post-conviction material. *See* Ex. G

---

[8] Although the parties had previously served all subpoenas at counsel's request to Assistant State's Attorney Lisa Meador, who represents Defendant Valentini, after the initial return date for the December 5, 2014 subpoena had passed, Ms. Meador informed Plaintiffs that the subpoena had been improperly served because it should have been sent to a different attorney at the CCSAO, Assistant State's Attorney Paul Castiglione. Although Plaintiff disagreed that the subpoena was improperly served, Plaintiff re-served the subpoena upon Mr. Castiglione according to Ms. Meador's direction. *See* Ex. H. At that time, counsel also inquired whether the CCSAO would be standing on the same objections it had raised at Defendant Valentini's deposition, in order to prevent any further delay in bringing the issue to the attention of the court, but Ms. Meador would not take a position on the issue and directed counsel to Mr. Castiglione. Mr. Castiglione also did not take a position on the issue until finally submitting the January 5, 2015 response.

(responses #1 and 6). The CCSAO's response did not include a declaration or privilege log, but stated that they would be forthcoming. *Id.*[9]

### B. No Privileges Apply

The same analysis set forth above with respect to Defendant Valentini applies equally to the CCSAO: the deliberative-process privilege should not apply at all; even if it does, Plaintiffs have shown a particularized need for the information. *See supra* at Section I.[10]

Nor is the work-product privilege applicable. As the CCSAO has repeatedly reminded Plaintiffs, it must be served with a subpoena rather than a request for production because it is not a party to this case. "[T]he considerations that underlie the work-product doctrine do not apply where information is sought from a non-party." *Evans*, 231 F.R.D. at 310–11 (finding that work-product privilege did not apply to pardon documents sought from the Governor in wrongful-conviction case). In addition, the underlying criminal case is closed: Plaintiffs' convictions have been vacated, the CCSAO announced it would not retry Plaintiffs, and they have been issued a certificate of innocence; true-perpetrator Johnny Douglas is deceased; and Defendant Valentini testified that there is no ongoing reinvestigation into the Glover homicide. Ex. A at 176–77. There is "no 'authority holding that a public prosecutor—having completed his investigation and having announced . . . that no further action would be taken by him—is entitled to rely upon the work product doctrine when the fruits of his investigation become relevant to civil litigation to which he is not a party.'" *Hernandez v. Longini*, No. 96 C 6203, 1997 WL 754041, at *2 (N.D. Ill. Nov. 13, 1997) (quotation omitted); *see also Ostrowski v. Holem*, No. 02 C 50281, 2002 WL

---

[9] On January 7, 2015 and again on January 13, 2015, counsel for the CCSAO advised undersigned counsel for Plaintiff Saunders that the CCSAO is still in the process of preparing those documents. Given the upcoming close of discovery at the end of February 2015, and that the positions of the parties are clear, counsel for Plaintiff Saunders informed counsel for the CCSAO of the Plaintiffs' intent to file to timely bring this issue to the Court.

[10] In addition, although the CCSAO has asserted its intent to provide a declaration and privilege log as required, *see Evans* 231 F.R.D. at 316, should it fail to do so in a reasonable time that would provide an independent ground to grant Plaintiffs' motion. If the CCSAO provides a declaration and privilege log, Plaintiffs reserve the right to address the sufficiency of that privilege log.

16

31956039, at *4 (N.D. Ill. Jan. 21, 2002) ("[M]any courts have found the work-product privilege unavailable when a prosecutor in a prior criminal investigation later objects to discovery by a litigant in a related and subsequent civil lawsuit.").

## CONCLUSION

WHEREFORE Plaintiffs respectfully request that this Court enter an order compelling Defendant Valentini to produce all withheld documents relating to the reinvestigation of the Glover homicide and post-conviction proceedings, and to reopen Defendant Valentini's deposition in order to permit Plaintiffs to depose Defendant Valentini on those topics for the time reserved and two additional hours, as well as to enter an order compelling the Cook County State's Attorney's Office to produce all documents withheld.

Dated: January 13, 2015                Respectfully submitted,

| /s/ Alexandra Lampert | /s/ Russell Ainsworth | /s/ Henry Turner, Jr. |
|---|---|---|
| Peter Neufeld | Arthur Loevy | Stuart Chanen |
| Nick Brustin | Jon Loevy | Henry Turner |
| Anna Benvenutti Hoffmann | Russell Ainsworth | Valorem Law Group |
| Alexandra Lampert | Rachel Steinback | 35 East Wacker Dr., Ste. 3000 |
| Neufeld Scheck & Brustin LLP | David Owens | Chicago, IL  60601 |
| 99 Hudson St., 8th Floor | Loevy & Loevy | Phone: (312) 676-5460 |
| New York, NY 10013 | 312 N. May St., Ste. 100 | **Counsel for Vincent Thames**; |
| 212.965.9081 | Chicago, IL 60607 | Case No. 12-9170 |
|  | 312.243.5900 |  |
| John Benson | **Counsel for Harold Richardson**; |  |
| Law Office of John C. Benson | Case No. 12-9184 |  |
| 4111 S. Richmond |  |  |
| Chicago, IL 60632 |  |  |
| 312. 399.5419 |  |  |
| **Counsel for Michael Saunders**; |  |  |
| Case No. 12-12-9158 |  |  |

17

**CERTIFICATE OF SERVICE**

  I, Alexandra Lampert, an attorney, certify that on January 13, 2015, a copy of *Plaintiffs Michael Saunders, Vincent Thames, and Harold Richardson's Joint Motion To Reopen the Deposition of Fabio Valentini, and To Compel Documents From Valentini and the Cook County State's Attorney's Office* was served upon all counsel of record through the Court's electronic filing system, and upon Paul Castiglione, counsel for the Cook County State's Attorney's Office, by email at paul.castiglione@cookcountyil.gov.

               /s/ Alexandra Lampert
               Alexandra Lampert
               Neufeld Scheck & Brustin LLP
               99 Hudson St., 8th Floor
               New York, NY 10013
               212.965.9081