# Exhibit A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

TERRILL SWIFT,                    )
              Plaintiff,          )
   v.                             ) No.  12 L 012995
CITY OF CHICAGO, et al.,          )
              Defendants.         )

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL SAUNDERS,          )No.  12 C 9158
              Plaintiff,   )
   v.                      )
CITY OF CHICAGO, et al.,   )
              Defendants.  )
------------------------   )---------------------
VINCENT THAMES,            )No.  12 C 9170
              Plaintiff,   )
   v.                      )
CITY OF CHICAGO, et al.,   )
------------------------   )---------------------
HAROLD RICHARDSON,         )No.  12 C 9184
              Plaintiff,   )
   v.                      )
CITY OF CHICAGO, et al.,   )
              Defendants.  )

        PART I of the video discovery
deposition of FABIO VALENTINI, taken in the
above-entitled cause, before TRACY JONES, a
notary public of Cook County, Illinois, at
9:15 o'clock a.m. on December 8, 2014, at
375 East Chicago Avenue, 8th Floor, Chicago,
Illinois, pursuant to notice.
Reported by:    Tracy Jones, CSR, RPR, CLR
License No.:    084-004553

1

1          MR. KIVETZ:  Join.

2     BY MR. NEUFELD:

3          Q.   I'm just trying to understand your --

4     your best recollection on whether or not there

5     were any memos generated.

6          MS. ROSEN:  You asked him if he read any, not

7     if there were any generated.  So objection:

8     Form.

9          MR. KIVETZ:  Join.

10    BY MR. NEUFELD:

11         Q.   Well, fine.  Then the first question is

12    did you read any memos at all on this case from

13    December 2010 through January 1st, 2014?

14         MR. NOWINSKI:  Objection:  Form.

15         THE WITNESS:  I recall seeing, I don't know

16    what it was entitled.  I don't think it was

17    entitled a memo, but it was something that had

18    been written by Mark Ertler that --

19         MR. NOWINSKI:  I'm going to -- I'm going to

20    instruct you not to discuss anything that was

21    encompassed in the memo.

22    BY MR. NEUFELD:

23         Q.   I'm not asking you for the content of

24    the memo, but you say you received an internal

149

1      MR. KIVETZ:  Join.

2      THE WITNESS:  You would have to define

3   participated for me.

4   BY MR. NEUFELD:

5      Q.   Well, you participated in discussions

6   reviewing the Englewood case at times between

7   January 1st of 2011 and January 1st of 2014,

8   correct?

9      MR. NOWINSKI:  Objection:  Form.

10      MR. KIVETZ:  Join.

11      THE WITNESS:  Yes.

12   BY MR. NEUFELD:

13      Q.   I mean, on one -- at least one

14   occasion, didn't you have a telephone

15   conversation with me when I was representing

16   Mr. Saunders in his post-conviction capacity

17   about this case?

18      A.   Yes.

19      Q.   And on another occasion, didn't you

20   have meetings with my co-counsel, with Tara

21   Thompson and Josh Tepfer about this case?

22      A.   Not about this case, no.

23      Q.   Sir, are you aware of the fact that

24   Tara Thompson and Josh Tefler [sic] were

171

1   that was conducted in the post-conviction arena?

2       Q.   Yes.  Was it is closed?

3       MS. ROSEN:  Object to form.

4   BY MR. NEUFELD:

5       Q.   I'm trying to find out when it was --

6   when the reinvestigation of the murder of Nina

7   Glover was closed.

8       MR. NOWINSKI:  Objection:  Form.

9       MR. KIVETZ:  Join.

10      THE WITNESS:  The reinvestigation conducted

11  in the post-conviction arena?

12  BY MR. NEUFELD:

13      Q.   Well, is there another -- First of all,

14  is there another reinvestigation?

15      A.   None that I'm aware of.

16      Q.   Okay.  So the only reinvestigation

17  you're aware of is the one that was -- that

18  occurred in the post-conviction arena; is that

19  correct?

20      A.   Yes.

21      Q.   And that would be the reinvestigation

22  that occurred sometime after the Englewood

23  defendants in the criminal case filed a petition

24  for DNA testing and sometime prior to

                                              176

1    January 1st of 2014, correct?

2        A.   Yes.

3        Q.   Okay.  So I'm asking you when that --

4    when that post-conviction investigation --

5    reinvestigation closed.

6        A.   I don't recall the date.

7        Q.   Well, you said it definitely happened

8    before 2014, correct?

9        MS. ROSEN:  Objection:  Asked and answered.

10       MR. KIVETZ:  Join.

11       MR. NOWINSKI:  Form.

12       THE WITNESS:  Yes.

13   BY MR. NEUFELD:

14       Q.   But you don't know whether it was 2012

15   or 2013; is that what you're saying?

16       MR. NOWINSKI:  Objection:  Form.

17       THE WITNESS:  I believe it was 2012, but I

18   don't recall exactly.

19   BY MR. NEUFELD:

20       Q.   Do you know what was the triggering

21   event to close the reinvestigation?

22       MR. NOWINSKI:  Objection:  Form.

23       THE WITNESS:  I don't know if there was one,

24   so no.

                                                    177

1    mischaracterizes his testimony.

2         THE WITNESS:  I said I don't know.

3         MR. KIVETZ:  Join.

4         THE WITNESS:  I said I don't know.

5    BY MR. NEUFELD:

6         Q.   You don't know whether there are other

7    documents pertaining to those communications?

8         A.   I said I don't know if there were any

9    e-mails between me and any of those people.

10        Q.   Right.  And you don't know whether

11   there were any memos that any of those people

12   prepared, either, right?

13        MR. NOWINSKI:  Objection:  Form.

14        THE WITNESS:  Correct.

15   BY MR. NEUFELD:

16        Q.   Right.  But at a minimum, you said

17   there was a typed document by Ertler and an

18   e-mail by Ertler, correct?

19        A.   Yes.

20        Q.   Okay.  And, by the way, in Exhibit 61

21   and 62, those reports of investigations that

22   were done as part of the reinvestigation --

23        MR. NEUFELD:  I'm sorry?

24        MS. ROSEN:  60 and 61.

185

1    BY MR. NEUFELD:

2        Q.   60 and 61, okay, would those be

3    documents that you would have access to as well

4    if you wanted to review them?

5        MR. NOWINSKI:  Objection:  Form.

6        MR. KIVETZ:  Join.

7        THE WITNESS:  Yes.

8    BY MR. NEUFELD:

9        Q.   Okay.  Now take a look, if you would,

10   at the response I received from your lawyer on,

11   I think, Friday.  And this will be marked 63.

12                 (Whereupon, Valentini Deposition

13                  Exhibit No. 63 was marked for

14                  identification.)

15   BY MR. NEUFELD:

16       Q.   Okay.  And I'm calling your attention

17   again to No. 1, which is your -- your lawyer's

18   response to our first request, which I called

19   your attention to a moment ago.  Do you see

20   that?

21       A.   Do I see the response to No. 1?

22       Q.   Yes.

23       A.   Yes.

24       Q.   On 63, on the first page there?

                                                    186

1      A.   Yes.

2      Q.   Okay.  The response is when I'm asking

3  for all documents concerning the

4  reinvestigation.

5      MS. ROSEN:  Objection:  Form.

6      MR. NOWINSKI:  Join.

7  BY MR. NEUFELD:

8      Q.   Well, do you -- Sir, do you agree that

9  in Request For Production No. 1, that among the

10  documents that we're seeking, okay, are

11  documents either in your possession, your

12  custody, or your control relating to any of the

13  plaintiffs, Mr. Richardson, Mr. Saunders,

14  Mr. Thames, Mr. Swift, okay, or Mr. Fincher,

15  with respect to the investigation and

16  prosecution of Nina Glover's murder, including

17  through and beyond the post-conviction

18  proceedings and exonerations?  Do you see that?

19      A.   Yes.

20      Q.   Okay.  And as you read that, sir, is it

21  clear to you that we're seeking documents that

22  deal with the post-conviction reinvestigation?

23      MR. NOWINSKI:  Objection to form.

24      MR. KIVETZ:  Join.

187

1      MS. ROSEN:  Can you reask that or reread that

2   question.

3                  (Whereupon, the record was read

4                   as requested.)

5      MS. ROSEN:  Objection:  Vague.

6      THE WITNESS:  I would say that it includes

7   that, yes.

8   BY MR. NEUFELD:

9      Q.   Okay.  So it would include documents

10   that deal with the reinvestigation of the

11   Englewood murder that's either in your

12   possession, custody, or control, correct?

13      A.   You're asking me whether it says that

14   in there?

15      Q.   Yes.

16      A.   It does.

17      Q.   Okay.  And you said a moment ago that

18   if you wanted to get the typed document that

19   Mr. Ertler gave you involving the

20   post-conviction reinvestigation, that you could

21   have access to that, correct?

22      MR. NOWINSKI:  Objection:  Form; asked and

23   answered.

24      MR. KIVETZ:  Join.

188

1  retrieve an e-mail that I received from Mark

2  Ertler several years ago.  I just don't know.

3  BY MR. NEUFELD:

4      Q.   Well, assuming for the moment that it's

5  technically retrievable, is it something that

6  you would be able to have access to in your

7  office?

8      MR. NOWINSKI:  Objection:  Form.

9      THE WITNESS:  I don't know.

10 BY MR. NEUFELD:

11     Q.   What do you mean you don't know?  Why

12 do you not know if in fact the e-mail exists in

13 your office whether or not you could have

14 authorized access to it?

15     MS. ROSEN:  Objection:  Argumentative.

16     MR. NOWINSKI:  Form.

17     MR. KIVETZ:  Join.

18     THE WITNESS:  I don't know how that -- that

19 would work.  If there's an e-mail that was

20 written several years ago if I could access it

21 on my computer, I don't know.

22 BY MR. NEUFELD:

23     Q.   I said if it could -- if it could

24 technologically be accessed, would there be any

190

1    legal or administrative impediment to you

2    actually reviewing it?

3        MS. ROSEN:  Objection:  Asked and answered.

4        MR. NOWINSKI:  Objection:  Form; foundation;

5    speculation.

6        MR. KIVETZ:  Join.

7        THE WITNESS:  None that I can think of, but I

8    don't know.

9    BY MR. NEUFELD:

10       Q.   Okay.  And now putting aside the

11   e-mail, if the typed document that Mr. Ertler

12   showed you, okay, could be found to still exist,

13   would there be any impediment to you having

14   access to it?

15       MS. ROSEN:  Objection:  Form; foundation;

16   calls for speculation.

17       MR. KIVETZ:  Join.

18       MR. NOWINSKI:  Join.

19       THE WITNESS:  Depending on where it exists, I

20   don't know.

21   BY MR. NEUFELD:

22       Q.   If it exists in the state's attorney's

23   office, would there be any administrative or

24   legal impediment to you having access to that

                                                       191

1    document?

2        MR. NOWINSKI:  Objection:  Form.

3        MS. ROSEN:  Objection:  Form; foundation.

4        MR. NOWINSKI:  Speculation.

5        THE WITNESS:  If I were able to locate it and

6    somebody had their hands on it, none that I can

7    think of.

8    BY MR. NEUFELD:

9        Q.    Okay.  So would you agree, sir, that at

10   least as to those two documents, if they exist,

11   that they would be documents that would be under

12   your possession, custody, or at least control?

13       MS. ROSEN:  Objection:  Form.

14       MR. NOWINSKI:  Objection:  Form; foundation;

15   speculation; and calls for a conclusion.

16       MR. KIVETZ:  Join.

17       THE WITNESS:  I don't know.

18   BY MR. NEUFELD:

19       Q.    Well, why wouldn't they be under your

20   control?

21       MS. ROSEN:  Objection:  Form; foundation;

22   calls for speculation.

23       MR. KIVETZ:  Join.

24       MR. NOWINSKI:  Objection:  Form.  And

                                                      192

1    until Friday.

2    BY MR. NEUFELD:

3        Q.   Now, in addition to having

4    communications between January 1st of 2011 and

5    January 1st of 2014 with these various people,

6    did you personally review any of the documents

7    concerning Johnny Douglas?

8        MR. NOWINSKI:  Objection:  Form; foundation.

9        MR. KIVETZ:  Join.

10       THE WITNESS:  Yes.

11   BY MR. NEUFELD:

12       Q.   Okay.  And who provided you with those

13   documents?

14       MR. NOWINSKI:  Objection:  Form; foundation.

15       THE WITNESS:  I don't know.

16   BY MR. NEUFELD:

17       Q.   And you were aware of the fact from

18   your review -- By the way, in addition to simply

19   reviewing documents, did you also have any

20   discussions about Johnny Douglas with other

21   people?

22       MR. NOWINSKI:  Objection:  Form.  And to the

23   extent that it seeks discussions he had, topics

24   he had with individuals from the state's

195

1    attorney's office involving the reinvestigation

2    or post-conviction of this matter, I'm going to

3    instruct him not to answer as part of the

4    deliberative process.

5        MR. NEUFELD:  So that's your defense is that

6    he doesn't have to answer because it's part of

7    the deliberative process?

8        MR. NOWINSKI:  Yes.

9        MR. NEUFELD:  And are you going to make that

10   same objection to any questions about the

11   content of communications he had about the

12   reinvestigation of the Englewood case?

13       MR. NOWINSKI:  Yes.

14       MR. NEUFELD:  And have you filed any specific

15   document in writing detailing what

16   communications in this case fall within the

17   deliberative process?

18       MR. NOWINSKI:  As of this moment, no.

19       MR. NEUFELD:  Okay.

20   BY MR. NEUFELD:

21       Q.   So you became aware, did you not, that

22   Johnny Douglas was the sole source of the semen

23   recovered from Ms. Glover postmortem, correct?

24       MS. ROSEN:  Objection:  Form; foundation;

196

1    mischaracterizes the record.

2        MR. NOWINSKI:  Objection:  Form.  And I'm

3    going to instruct him not answer as to what he

4    learned in any of the conversations he had in

5    the reinvestigation of this matter.

6    BY MR. NEUFELD:

7        Q.   Did you become aware at some point that

8    Johnny Douglas was nicknamed The Maniac?

9        MR. NOWINSKI:  Objection.  Same objection.

10   I'm going to instruct him not to answer.

11       MR. BOWMAN:  I guess I'm -- I'm a little

12   puzzled and troubled at this point because my

13   understanding -- perhaps I'm -- perhaps I'm

14   wrong -- my understanding is that the

15   deliberative process privilege, which I

16   understand is the protection -- the only

17   protection that's being relied upon here, is a

18   protection for the deliberative process.  And I

19   don't understand how the question, which is --

20   the last two questions, which have been

21   propounded, which specifically request

22   information as to the factual knowledge of this

23   witness could possibly fall within a privilege

24   that protects a thought process.  I mean, does

197

1      MR. NOWINSKI:  Objection:  Form;

2   mischaracterizes evidence.

3   BY MR. NEUFELD:

4      Q.   So now I'm simply asking you as part of

5   that reinvestigation, did people come over and

6   present to you files on Johnny Douglas.

7      MR. NOWINSKI:  Objection:  Form; foundation.

8      MR. KIVETZ:  Join.

9      MS. ROSEN:  Object to form.

10     THE WITNESS:  At some point, I saw

11  information about Johnny Douglas.  I don't

12  recall who gave them to me or when it was.

13  BY MR. NEUFELD:

14     Q.   Okay.  Okay.  But you saw information

15  on Johnny Douglas.  Did the information that you

16  saw include the fact, okay, that Johnny Douglas'

17  DNA matched the sperm DNA recovered from the

18  deceased Ms. Glover in the postmortem autopsy?

19     MR. NOWINSKI:  Objection:  Form and

20  foundation.

21        And to the extent that you learned that

22  information solely as part of the deliberative

23  process in reinvestigating this claim, I'm going

24  to instruct you not to answer.  Should you have

201

1    investigation into Mr. Douglas -- I'm sorry,

2    into Mr. Randolph in the Dixmoor case, there was

3    an investigation into Mr. Douglas in this case;

4    is that correct?

5        MR. NOWINSKI:  Objection:  Form; foundation.

6        THE WITNESS:  The reinvestigation did involve

7    Johnny Douglas and -- Yes.

8    BY MR. NEUFELD:

9        Q.   Okay.  And during that reinvestigation

10   which involved Johnny Douglas, did you learn,

11   okay, that the only sperm DNA recovered from

12   Nina Glover postmortem came from Johnny Douglas?

13       MR. NOWINSKI:  Objection:  Form; foundation.

14   To the extent that it seeks information obtained

15   solely during the deliberative process on

16   whether or not to vacate the charge in this

17   matter, I'm instructing the witness not to

18   answer.

19   BY MR. NEUFELD:

20       Q.   Isn't it a fact, sir, that you got the

21   DNA information identifying Johnny Douglas --

22       MS. ROSEN:  Can you not raise your voice?

23       MR. NEUFELD:  I'm just getting a little

24   annoyed at these ridiculous objections.

206

1        THE WITNESS:  I don't know that information

2   was relayed directly to her.

3   BY MR. NEUFELD:

4        Q.   Okay.  Now, you're saying that she was

5   not part of the deliberations, correct?

6        MR. NOWINSKI:  Objection:  Form.

7        THE WITNESS:  I said I don't believe so.

8   BY MR. NEUFELD:

9        Q.   Right.  Who else was at that meeting

10  that she was present at?

11       A.   Myself --

12       Q.   I'm sorry.  Who?

13       A.   Myself.

14       Q.   Mm-hmm.

15       A.   State's Attorney Alvarez, Walt Hehner,

16  Mark Ertler.  Those are the ones I remember for

17  sure.

18       Q.   Okay.  And did that motion occur before

19  or after Judge Biebel ordered that the

20  conviction be vacated [sic]?

21       MR. NOWINSKI:  Objection to form.

22       MS. ROSEN:  You said motion, did that motion

23  occur.

24       MR. NEUFELD:  I'm sorry.  Withdrawing.  Thank

                                                      224

1    you.

2    BY MR. NEUFELD:

3        Q.   Did that meeting occur before or after

4    Judge Bieber [sic] granted the motion to vacate

5    the conviction in the Englewood case?

6        MR. NOWINSKI:  Object to form; speculation.

7        THE WITNESS:  Judge Biebel?

8    BY MR. NEUFELD:

9        Q.   Yes.

10       A.   After.

11       Q.   Okay.  And did that meeting happen

12   before or after your office decided to dismiss

13   the indictments against the Englewood

14   defendants, before or after?

15       MR. NOWINSKI:  Objection:  Form.

16       THE WITNESS:  Before.

17   BY MR. NEUFELD:

18       Q.   Okay.  And would you please tell me all

19   of the different things that were discussed at

20   that meeting.

21       MR. NOWINSKI:  Objection:  Form; foundation.

22   And I'm going to instruct him not to answer as

23   it's covered by the deliberative process.

24       MR. NEUFELD:  Is it your position, Counselor,

225

1        THE WITNESS:  Yes.

2   BY MR. NEUFELD:

3        Q.   So let me ask you this:  If you

4   yourself were uncertain, why is it that you

5   opposed Mr. Saunders' motion to vacate the

6   conviction?

7        MR. NOWINSKI:  Objection:  Form; foundation.

8   And to the extent that it seeks information

9   based on the deliberative process, I'm going to

10  instruct him not to answer.

11       MR. KIVETZ:  Join.

12       MS. ROSEN:  Do you think you could read back

13  the question.

14                  (Whereupon, the record was read

15                    as requested.)

16       THE WITNESS:  Based on what the lawyer is

17  saying, anything that was involved in the

18  decision regarding the motion to vacate would be

19  in the deliberative process.

20  BY MR. NEUFELD:

21       Q.   Okay.  Well, let me go back a step,

22  then.  You said that as of now, you're

23  uncertain.  Okay.  You don't have a position one

24  way or another as to whether Mr. Saunders was

                                              244

1      MS. ROSEN:  Objection:  Form.

2      MR. NOWINSKI:  Join.

3      THE WITNESS:  I guess it's pretty much the

4  same thing, yeah.

5  BY MR. NEUFELD:

6      Q.   Okay.  So even though you haven't

7  reached a conclusion yet in your own mind, there

8  are some factors which militate in one

9  direction, and then there are other factors that

10  militate in another direction, which is why you

11  haven't made up your own mind yet; is that a

12  fair statement?

13      MR. NOWINSKI:  Objection:  Form.

14      MS. ROSEN:  Object to form.

15      MR. KIVETZ:  Join.

16      THE WITNESS:  Yes.

17  BY MR. NEUFELD:

18      Q.   So now I'm asking you, what are the

19  factors in your own mind, okay, that -- that

20  move in the direction that if a new jury heard

21  the evidence about Johnny Douglas and heard the

22  evidence about the DNA that it would probably

23  change the result?  And then I will ask you the

24  second question, which is what are the factors

255

1    in the other direction?

2        MR. NOWINSKI:  Objection to form; foundation.

3        MS. ROSEN:  Object to form.

4        MR. NOWINSKI:  To the extent that these were

5    factors that were only learned in the

6    deliberative process, I'm going to instruct him

7    not to answer.

8        MR. NEUFELD:  I'm not asking about the

9    deliberative process; I'm asking about his own

10   mind if he applies this test.

11       MR. NOWINSKI:  You asked him -- You asked him

12   factors.  And I'm instructing him if he learned

13   of those factors during the deliberative

14   process, then he's not going to answer.

15   BY MR. NEUFELD:

16       Q.   Okay.  What are the -- Okay.  What are

17   the factors that militate in the direction that

18   a new jury would probably reach a different

19   result?

20       MR. NOWINSKI:  Same objection; same

21   instruction.

22       THE WITNESS:  Based on the objection, I can't

23   answer the question.

24

                                                     256

1    term, did you?

2         MR. NOWINSKI:  Objection:  Form.

3         THE WITNESS:  I can't recall.

4    BY MR. NEUFELD:

5         Q.   Have -- Have you ever received any

6    lectures on conflict of interest as a

7    prosecutor?

8         MR. NOWINSKI:  Objection:  Form.

9         THE WITNESS:  Any letters?

10   BY MR. NEUFELD:

11        Q.   Lectures in training or --

12        A.   Lectures?

13        Q.   Yeah.

14        MS. ROSEN:  Objection:  Form.

15        THE WITNESS:  Not that I can remember.

16   BY MR. NEUFELD:

17        Q.   Well, are you familiar with the ABA --

18   the American Bar Association Standards For

19   Prosecutors?

20        MR. NOWINSKI:  Objection:  Form.

21        THE WITNESS:  I believe so, yes.

22   BY MR. NEUFELD:

23        Q.   Okay.  Are you familiar with the

24   statement in the ABA Standards regarding

275

1    conflict of interest?  Have you read it?

2         A.   I'm sure I've read it.  I couldn't

3    recite it to you right now.

4         Q.   No.  Are you aware of the prohibition

5    that states in sum and substance that a

6    prosecutor should not permit his or her

7    professional judgment or obligations to be

8    affected by his or her own political, financial,

9    business, property, or personal interests?

10        MR. NOWINSKI:  Objection:  Form; foundation.

11        MS. ROSEN:  Object to form.

12        MR. KIVETZ:  Join.

13   BY MR. NEUFELD:

14        Q.   Were you aware of that principle before

15   today?

16        MR. NOWINSKI:  Objection:  Form.

17        MS. ROSEN:  Object to form.

18        MR. KIVETZ:  Join.

19        THE WITNESS:  Yes.

20   BY MR. NEUFELD:

21        Q.   And were you aware of that principle

22   back on -- by January of 19- -- I'm sorry, by

23   January 1st of 2011 when you were in the office?

24        MR. NOWINSKI:  Objection:  Form.

276

1          Okay.  So the question is, you said you

2    agree that you have a personal interest that a

3    Court not find that you fabricated the

4    confession, correct?

5         MR. NOWINSKI:  Objection:  Form.

6         MS. ROSEN:  In this civil case.

7         MR. KIVETZ:  Join.

8         THE WITNESS:  You're asking me whether I have

9    a personal interest in a civil case where you're

10   suing me personally?  The answer is yes.

11   BY MR. NEUFELD:

12        Q.   Even if you weren't being sued

13   personally, sir, would you have a personal

14   interest in any adjudicative body finding that

15   you fabricated a confession?

16        MR. NOWINSKI:  Objection:  Form; foundation;

17   speculation.

18        THE WITNESS:  Yes.

19   BY MR. NEUFELD:

20        Q.   Okay.  And so if you have that personal

21   interest on the one hand, don't you believe

22   therefore that according to the prosecutors'

23   function standards listed in the ABA that you

24   should not permit yourself to be involved in a

283

1    professional judgment situation where you do

2    have a personal interest in the outcome?

3         MR. NOWINSKI:  Objection:  Form; foundation.

4         THE WITNESS:  You're asking me about this

5    case?

6    BY MR. NEUFELD:

7         Q.   Yeah.

8         A.   No.

9         Q.   You don't see it as a conflict?

10        MS. ROSEN:  Objection:  Asked and answered.

11        MR. NOWINSKI:  Form.

12   BY MR. NEUFELD:

13        Q.   When I say see it as a conflict, I'm

14   talking about where you were involved in

15   deciding whether or not to oppose the motion to

16   vacate the conviction or oppose the motion for

17   certificate of innocence.

18        MR. NOWINSKI:  Objection:  Form.

19        MS. ROSEN:  Object to form; mischaracterizes

20   his testimony.

21        THE WITNESS:  I don't see anything I did as

22   being a conflict.

23   BY MR. NEUFELD:

24        Q.   Well, did you participate in the

284

1   decision to oppose the motion to vacate?

2        MR. NOWINSKI:  Objection:  Form; foundation.

3        THE WITNESS:  No.

4   BY MR. NEUFELD:

5        Q.   Okay.  Did you participate in the

6   decision to dismiss the indictment?

7        MR. NOWINSKI:  Objection:  Form; foundation.

8        THE WITNESS:  Not really.

9   BY MR. NEUFELD:

10       Q.   Did you participate in the process that

11  led to the decision to oppose the certificate of

12  innocence?

13       MR. NOWINSKI:  Objection:  Form.

14       THE WITNESS:  No.

15  BY MR. NEUFELD:

16       Q.   Did you participate in the process that

17  led to a decision to oppose the motion to

18  vacate?

19       MR. NOWINSKI:  Objection:  Form.

20       A.   I'm sorry.  Rephrase that question

21  please, or ask it again.

22       MR. NEUFELD:  Sure.  Could you read it back,

23  please.

24

285

1  quicker if you didn't feel the need to then add

2  all those ad hominems into the record.

3      MS. MEADOR:  Well, I'm just suggesting that

4  instead of just saying -- after we object, you

5  going, Isn't that true, or, Right, or something

6  that forces us then to object again, that you

7  would speed up the process.  Just a suggestion.

8  It's your deposition.

9  BY MR. NEUFELD:

10     Q.   Can you answer the question?

11     A.   I don't remember whether that ever

12  crossed my mind or not.

13     Q.   I'm sorry.  What?

14     A.   I don't recall whether it ever crossed

15  my mind or not.

16     Q.   Okay.  At what point in your own mind

17  did your thinking change from believing that

18  Michael Saunders was guilty to no longer being

19  sure one way or the other?

20     MR. NOWINSKI:  Objection:  Form.

21     THE WITNESS:  I don't know exactly.

22  BY MR. NEUFELD:

23     Q.   Well, what fact or factors changed your

24  mind from him being -- believing he was guilty

289

1    to no longer being sure of it?

2        MR. NOWINSKI:  Objection:  Form.

3        MS. ROSEN:  Objection:  Relevance.

4        MR. NOWINSKI:  Form; foundation.  To the

5    extent you learned of factors during the process

6    of the reinvestigation, the determination of

7    whether or not to vacate or to dismiss the

8    charges, I'm going to instruct him not to

9    answer.

10        MR. KIVETZ:  Join.

11   BY MR. NEUFELD:

12       Q.  Answer the question.

13       A.  Can't answer.

14       Q.  In your own mind, you believe that

15   Johnny Douglas was involved in the attack and

16   murder of Ms. Glover?

17       MR. NOWINSKI:  Objection:  Form.

18       MS. ROSEN:  Relevance.

19       THE WITNESS:  I don't know.

20   BY MR. NEUFELD:

21       Q.  Well, you've heard evidence suggesting

22   that he was, correct?

23       MR. NOWINSKI:  Objection:  Form.

24       MS. ROSEN:  Object to form.

290

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

```
TERRILL SWIFT,                 )
          Plaintiff,           )
   v.                          ) No.  12 L 012995
CITY OF CHICAGO, et al.,       )
          Defendants.          )
```

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
MICHAEL SAUNDERS,        )No.  12 C 9158
          Plaintiff,     )
   v.                    )
CITY OF CHICAGO, et al., )
          Defendants.    )
------------------------  )---------------------
VINCENT THAMES,          )No.  12 C 9170
          Plaintiff,     )
   v.                    )
CITY OF CHICAGO, et al., )
------------------------  )---------------------
HAROLD RICHARDSON,       )No.  12 C 9184
          Plaintiff,     )
   v.                    )
CITY OF CHICAGO, et al., )
          Defendants.    )
```

PART II of the video discovery deposition of FABIO VALENTINI, taken in the above-entitled cause, before TRACY JONES, a notary public of Cook County, Illinois, at 9:15 o'clock a.m. on December 9, 2014, at 375 East Chicago Avenue, 8th Floor, Chicago, Illinois, pursuant to notice.

Reported by:    Tracy Jones, CSR, RPR, CLR
License No.:    084-004553

397

1          MS. ROSEN:  Objection:  Form.

2          MR. KIVETZ:  Join.

3          MR. NOWINSKI:  Join.

4          THE WITNESS:  No.  In other words, I can't

5     speculate on possibilities that have no support

6     in any facts that I'm aware of.

7     BY MR. NEUFELD:

8          Q.   Well, I'm not suggesting that you can

9     speculate professionally in a court of law.  I'm

10    asking you, in your own mind as you went over

11    this case, okay, what, if any, possible theories

12    did you come up with that would explain on the

13    one hand Mr. Saunders giving you the statement

14    that you attribute to him yet him being

15    completely innocent?

16         MS. ROSEN:  Can you read back the question.

17              (Whereupon, the record was read

18               as requested.)

19         MR. NOWINSKI:  I'm going to object to the

20    form of the question.  To the extent that these

21    were theories that were arrived to -- arrived at

22    during the process of deliberating whether or

23    not to vacate the convictions of these

24    individuals, I'm going to instruct the witness

551

1   now.  Okay?  And I'm going to reserve whatever

2   time is left for me to bring back this witness

3   should the Court allow it for two purposes.

4   One, if the Court orders you to produce the

5   reinvestigation file beyond the few pages you've

6   already produced and to question him about that,

7   and also to question him about all the areas

8   that you instructed him not to answer my

9   questions concerning his meetings from

10   January 1st, 2011, through 2014 with other

11   people in his office concerning the

12   reinvestigation of the Glover murder and the

13   motions that were filed to vacate the conviction

14   and secure a certificate of innocence.

15      MS. ROSEN:  On behalf of all plaintiffs?

16      MR. NEUFELD:  Yeah.  I'm making that

17   reservation.  The time is over.  Okay?  Ended.

18      MS. MEADOR:  We're not agreeing to go off the

19   record.

20      MR. NEUFELD:  I'm saying there's no more

21   questions.

22      MS. ROSEN:  So, like, first of all, we would

23   have questions, potentially.

24      MR. NEUFELD:  Fine.  So you go ahead and do

553