**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL SAUNDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-cv-09158 |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |
| | ) | |
| VINCENT THAMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-cv-09170 |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |
| | ) | |
| HAROLD RICHARDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-cv-09184 |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Michael Saunders, Harold Richardson, and Vincent Thames were wrongfully convicted of the rape and murder of Nina Glover, each spending more than 16 years in prison before being exonerated by DNA evidence. Plaintiffs filed separate civil rights lawsuits against the City of Chicago and various individuals seeking to recover for their wrongful convictions under state and federal law.

On October 13, 2013, the Court issued an identical Memorandum Opinion and Order in each of the three above-captioned cases (12-cv-9158 [121]; 12-cv-9170 [84]; 12-cv-9184 [81]), ruling on Defendants' then-pending motions to dismiss filed in each of those cases. Now before the Court are Plaintiffs' motions to reconsider (12-cv-9158 [185]; 12-cv-9170 [131]; 12-cv-9184 [119]) the Court's dismissal of Count I of their respective complaints, which the Court previously dismissed as time-barred. For the reasons set forth below, Plaintiffs' motions (12-cv-9158 [185]; 12-cv-9170 [131]; 12-cv-9184 [119]) are granted, and the Court reinstates Count I in its entirety in each of Plaintiffs' complaints.

Also before the Court is Defendant City of Chicago's motion to bifurcate and stay discovery and trial of Plaintiffs' municipal-liability claims, filed in each of the three cases (12-cv-9158 [207]; 12-cv-9170 [149]; 12-cv-9184 [137]). For the reasons set forth below, Defendant City of Chicago's motions (12-cv-9158 [207]; 12-cv-9170 [149]; 12-cv-9184 [137]) are granted.

As an administrative matter, in the Thames case, 12-cv-9170, the docket shows Individual Defendants' motion to depose incarcerated witnesses [144] as a pending motion, but Magistrate Judge Finnegan granted that motion on July 8, 2015 [See 146]. The Clerk is instructed to strike that motion [144] as an active motion on the Court's docket.

## I.      Background[1]

The Court set forth the factual history of this case in detail in its previously-issued memorandum opinion and order (12-cv-9158 [121]; 12-cv-9170 [84]; 12-cv-9184 [81]) ruling on Defendants' motions to dismiss. Because the motions currently before the Court mostly relate to procedural issues, the Court offers only a brief reiteration of the relevant background here.

---

[1] For purposes of Defendants' motions to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint.  See, *e.g.*, *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).

After bench trials that commenced in November 1997, Plaintiffs Saunders and Richardson were convicted of the rape and murder of Nina Glover, and each was sentenced to 40 years in prison. After seeing the results of those trials, Plaintiff Thames elected to plead guilty and was sentenced to 30 years in prison. Plaintiffs allege that their convictions and sentences were based entirely on Defendants' use of self-incriminating statements that Defendant Officers obtained from Plaintiffs through the use of unconstitutional interrogation methods. See 12-cv-9158 (Saunders) [1, ¶ 117; *id.* ¶ 84 ("The State's Attorney prosecuting the case acknowledged that its entire case against [Saunders] rested on the confession. During pretrial proceedings, the ASA told the court 'we cannot proceed without this confession' and that, if the confession were suppressed, the state would have 'to file a certificate of impairment' because it could not go forward.")]; 12-cv-9184 (Richardson) [1, ¶ 108; *id.* ¶ 3 ("The sum total of the evidence against [Richardson] was his false confession * * *.")]; 12-cv-9170 (Thames) [5, ¶ 75 ("Thames was prosecuted and convicted for Ms. Glover's rape and murder based solely on these false statements."); *id.* ¶ 2 ("The sum total of the evidence against Thames * * * was his and his co-defendants' false confessions.")].

In May of 2011, based on DNA samples taken during the original investigation and with the use of the Combined DNA Index System (CODIS) database, the Illinois State Police linked convicted felon Johnny Douglas—whom Defendant Officers had met, but failed to subsequently investigate, at the crime scene on November 7, 1994—to the rape and murder of Ms. Glover. Based on these findings, on November 16, 2011, the Circuit Court of Cook County granted Plaintiffs' joint petition to vacate their convictions, and Plaintiffs were released from prison. The State of Illinois granted Plaintiffs certificates of innocence on September 14, 2012.

On November 15 2012, Plaintiffs Saunders, Thames, and Richardson each filed a complaint in this case. On November 20, 2012, Thames filed a first amended complaint. Each operative complaint contains eleven counts and names the City of Chicago and various individuals (both known and unknown) as Defendants, including police officers and Assistant State's Attorneys.

Relevant here, in Count I of their operative complaints, Plaintiffs allege that Defendants violated the Fifth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 by coercing confessions from Plaintiffs and then using Plaintiffs' self-incriminating statements against them in their respective criminal cases. On November 13, 2013, the Court granted in part and denied in part Defendants' motions to dismiss Plaintiffs' operative complaints, dismissing Count I as time-barred. Now before the Court are Plaintiffs' motions to reconsider the dismissal of Count I in light of subsequently-issued Seventh Circuit opinions regarding the accrual of Fifth Amendment self-incrimination claims.

Also relevant here, Plaintiffs seek to hold the City of Chicago liable under 42 U.S.C. § 1983 pursuant to *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978), for the City's alleged pattern and practice of using unconstitutional means to obtain confessions from suspects and arrestees, the City's alleged policy and practice of fabricating statements, the City's alleged practice of not recording interrogations, and the City's alleged failure to adequately train, supervise, and discipline officers who engaged in the alleged constitutional violations. These so-called *Monell* claims survived Defendants' motions to dismiss. Now before the Court are Defendants' motions to bifurcate Plaintiffs' *Monell* claims against the City of Chicago, where Defendants seek to stay discovery and trial on those claims pending resolution of Plaintiffs' § 1983 claims against the individual Defendants.

## II.     Legal Standard

Because the Court's November 13, 2013 order did not dispose of this case in its entirety,

Plaintiffs' motion to reconsider is governed by Federal Rule of Civil Procedure 54(b):

> [A]ny order or other decision, however designated, that adjudicates fewer than all
> the claims or the rights and liabilities of fewer than all the parties does not end the
> action as to any of the claims or parties and may be revised at any time before
> entry of a judgment adjudicating all the claims and all the parties' rights and
> liabilities.

Fed. R. Civ. P. 54(b). Under this rule, a district court has inherent authority to reconsider its own

orders entered prior to final judgment. See *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*,

460 U.S. 1, 12 (1983) ("[E]very order short of a final decree is subject to reopening at the

discretion of the district judge."); *Diaz v. Indian Head, Inc.*, 686 F.2d 558, 562–63 (7th Cir.

1982) (interlocutory orders may be "reconsidered and reviewed at any time prior to final

judgment" (citation and internal quotation marks omitted)); *Mintz v. Caterpillar Inc.*, 788 F.3d

673, 679 (7th Cir. 2015) (noting that a district judge has "discretion to reconsider 'an

interlocutory judgment or order at any time prior to final judgment.'" (quotation omitted)).

"Motions for reconsideration serve a limited function: to correct manifest errors of law or

fact or to present newly discovered evidence." *Conditioned Ocular Enhancement, Inc. v.

Bonaventura*, 458 F. Supp. 2d 704, 707 (N.D. Ill. 2006) (quoting *Caisse Nationale de Credit

Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996)).

In regard to the "manifest error" prong, a motion to reconsider is proper only when "the

Court has patently misunderstood a party, or has made a decision outside the adversarial issues

presented to the Court by the parties, or has made an error not of reasoning but of apprehension."

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); see also

*Wiegel v. Stork Craft Mfg., Inc.,* 2012 WL 2130910, at *2 (N.D. Ill. June 6, 2012)

("Reconsideration is not appropriate where a party seeks to raise arguments that could have been

raised in the original briefing."); *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party," instead it "is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'"). With respect to the second prong, a motion to reconsider is appropriate if there has been "a change in, or clarification of, law that makes clear that the earlier ruling was erroneous." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 572 (7th Cir. 2006) (citations omitted).

## III.    Analysis

### A.    Motion to Reconsider

In Count I of Plaintiffs' complaints, they argue that Defendants, acting under color of law, forced Plaintiffs to falsely incriminate themselves against their will in violation of the Fifth and Fourteenth Amendments. Plaintiffs further allege that Defendants used the coerced statements against Plaintiffs to their detriment in their respective criminal cases, and that these statements were the only reason that Plaintiffs were prosecuted and convicted of the murder of Ms. Glover. See 12-cv-9158 [1, ¶¶ 84, 114–19]; 12-cv-9170 [5, ¶¶ 2, 72–77]; 12-cv-9184 [1, ¶¶ 3, 105–110].

The Court previously held that Plaintiffs' self-incrimination claims were time-barred because the claims accrued before Plaintiffs' convictions and thus were not tolled during the pendency of their convictions.[2] See *Saunders v. City of Chicago*, 2013 WL 6009933, at *7 (N.D. Ill. Nov. 13, 2013). In reaching that conclusion, the Court determined that Plaintiffs' Fifth Amendment self-incrimination violations occurred "the first time that their confessions were

---

[2] There is no dispute that Plaintiffs' claims would be timely if their claims *were* tolled during the pendency of their convictions. Section 1983 does not have an express statute of limitations, and so federal courts apply the forum state's statute of limitations for personal injury claims. See *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1988). In Illinois, the statute of limitations for personal injury claims is two years. *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008). The Circuit Court of Cook County vacated Plaintiffs' convictions on November 16, 2011, and Plaintiffs filed their complaints in the present action on November 20, 2012—just over one year later.

introduced in a courtroom proceeding," *id.* at *4, and that Plaintiffs' Fifth Amendment self-incrimination claims "accrued when the confessions first were used against them in a courtroom proceeding and not, as Plaintiffs' urge[d], when their convictions were set aside." *Id.* at *6. The Court noted that "courts in this district have not taken a uniform approach to the accrual of Fifth Amendment claims alleging violations of the right against self-incrimination," but the Court relied on a then-recently-released (non-precedential) opinion from the Seventh Circuit, *Franklin v. Burr*, 535 F. App'x 532 (7th Cir. 2013), in reaching its decision. Since that time, the Seventh Circuit has issued three binding opinions that have clarified the law regarding the accrual of Fifth Amendment self-incrimination claims. See *Hill v. Murphy*, 785 F.3d 242 (7th Cir. 2015); *Moore v. Burge*, 771 F.3d 444 (7th Cir. 2014); *Matz v. Klotka*, 769 F.3d 517 (7th Cir. 2014). In light of these decisions, the Court now vacates its prior dismissal of Count I of Plaintiffs' complaints as time-barred, and reinstates Count I in its entirety in each of Plaintiffs' operative complaints.

Starting from the beginning, *Heck v. Humphrey*, 512 U.S. 477 (1994), held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; it if would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 486–87. In addition to spawning a sea of case law regarding when claims "necessarily imply" the invalidity of convictions, *Heck* also affected the calculation of statutes of limitations for § 1983 claims because, generally speaking, the statute of limitations is tolled for claims while they are barred. *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014) ("*Heck* holds that a claim that implies the invalidity of a criminal conviction does not accrue, and the statute of limitations does not begin to run, until the conviction is set aside by the judiciary or the defendant receives a pardon."). But

a wrinkle surfaced regarding accrual: do constitutional injuries that occur before any conviction or sentence accrue at the time of the injury, or are those claims subject to deferred accrual under *Heck* if they ultimately impugn a future conviction or sentence?

The Supreme Court addressed this issue—at least in the Fourth Amendment context[3]—in *Wallace v. Kato*, 549 U.S. 384 (2007). *Wallace* involved a Fourth Amendment wrongful arrest claim, where the plaintiff alleged that he was wrongfully arrested and detained pursuant to a police investigation of a murder. *Wallace*, 549 U.S. at 388. The question was whether that claim accrued at the time of arrest, or whether the claim was subject to deferred accrual under *Heck*. The Supreme Court noted that, in general, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law," and the standard rule is that accrual occurs when the plaintiff has a complete and present cause of action. *Id.* In the Fourth Amendment wrongful-arrest/false-imprisonment context at issue in *Wallace*, the plaintiff's claim accrued at the time of the arrest, but, due to a nuance in false-imprisonment law, the statute of limitations didn't begin to run until the false imprisonment ended (*i.e.*, when legal process was initiated). *Id.* at 390. Regardless, the Supreme Court held that *Heck*'s deferred-accrual rule did not apply because the violation accrued *before* any conviction or sentencing. *Id.* at 393; see also *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010) ("*Wallace* holds that a claim that accrues before a criminal conviction may and usually must be filed without regard to the conviction's validity.").

To clarify its holding, the Supreme Court contemplated an instance where a plaintiff suffers a constitutional injury, the plaintiff files a timely § 1983 lawsuit, and then while the plaintiff's § 1983 suit is pending, he or she is charged in a criminal proceeding where the

---

[3] See *Wallace v. Kato*, 126 S. Ct. 2891, 2891 (2006) (limiting the grant of certiorari to the Fourth Amendment); see also *Evans*, 603 F.3d at 364–65 (*Wallace* only applies to Fourth Amendment claims).

pending § 1983 claim relates to a ruling that will likely be made in the forthcoming criminal trial. In that instance, the court should stay the civil suit, and if the plaintiff is ultimately convicted and if success on the § 1983 claim would impugn that conviction, "*Heck* will require dismissal" of the § 1983 suit (without prejudice pending any future invalidation of the conviction); "otherwise, the civil action will proceed, absent some other bar to suit." *Id.* at 393–94. But the Court also contemplated a related instance where a plaintiff suffers a constitutional injury, the plaintiff *does not* file a § 1983 suit prior to conviction, and the plaintiff's subsequently-filed § 1983 claim necessarily implies the invalidity of the conviction. The Supreme Court held that although the claim would be *Heck* barred (*i.e.*, *Heck* would require dismissal), the plaintiff's claim *would not* be tolled under *Heck* while the *Heck* bar was in place.[4] *Id.* at 394–97.

With this understanding of *Heck* and *Wallace*, the next question is whether a § 1983 claim alleging a Fifth Amendment self-incrimination violation is eligible for deferred accrual under *Heck*. Regarding statements compelled by police interrogations, the Supreme Court has said that "it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs." *Chavez v. Martinez*, 538 U.S. 760, 767 (2003); *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1026–27 (7th Cir. 2006) ("[W]here, as here, a suspect's criminal prosecution was not only initiated, but was commenced *because* of her allegedly un-warned confession, the 'criminal case' contemplated by the Self-Incrimination Clause has begun."). Applying the

---

[4] See also *Wallace*, 549 U.S. at 393 ("What petitioner seeks, in other words, is the adoption of a principle that goes well beyond *Heck*: that an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside. The impracticality of such a rule should be obvious. In an action for false arrest it would require the plaintiff (and if he brings suit promptly, the court) to speculate about whether a prosecution will be brought, whether it will result in a conviction, and whether the pending civil action will impugn that verdict—all this at a time when it can hardly be known what evidence the prosecution has in its possession. And what if the plaintiff (or the court) guesses wrong, and the anticipated future conviction never occurs, because of acquittal or dismissal? Does that event (instead of the *Heck*-required setting aside of the extant conviction) trigger accrual of the cause of action? Or what if prosecution never occurs—what will the trigger be then? We are not disposed to embrace this bizarre extension of *Heck*.").

general rule that accrual of § 1983 claims occurs when the plaintiff has a complete and present cause of action, Fifth Amendment claims alleging self-incrimination violations accrue within the criminal proceeding itself. Under a strict reading of *Wallace*, though, because a violation within a criminal proceeding necessarily occurs *before* a conviction, it would not be eligible for *Heck*'s delayed accrual rule. That being said, *Wallace* applies only to Fourth Amendment § 1983 claims, which usually relate to police conduct that occurs before a criminal proceeding is initiated. See *Wiley v. City of Chicago*, 361 F.3d 994, 998 (7th Cir. 2004) ("[W]e have held that the scope of a Fourth Amendment claim is limited up until the point of arraignment."). The Supreme Court has not applied *Wallace* to Fifth Amendment § 1983 claims, which can be predicated on state action occurring all the way up to the point of conviction (*i.e.*, during the criminal proceeding or at sentencing). See *Sornberger*, 434 F.3d at 1026 ("[T]he Fifth Amendment is, at bottom, a trial protection."). As such, applying *Wallace* equally to § 1983 claims brought under the Fourth and Fifth Amendments would result in the exclusion of *all* pre-conviction § 1983 claims from deferred-accrual eligibility, essentially erasing *Heck* tolling. This is an unreasonable result.

Since the Court's initial ruling in this case, the Seventh Circuit has addressed this issue, explaining that the relevant inquiry for determining *Heck*-tolling eligibility is whether the alleged constitutional violation occurred "in court" or "out of court," thus clarifying the "pre-conviction/post-conviction" delineation discussed in *Wallace*. See *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014). The Seventh Circuit's analysis in *Moore* is particularly instructive:

> The [district] judge * * * held that four plaintiffs' claims * * * are blocked by *Heck v. Humphrey*, 512 U.S. 477 (1994), because they remain in prison. The judge did not recognize that, if *Heck* governs, then these plaintiffs' claims are too early, not too late—for *Heck* holds that a claim that implies the invalidity of a criminal conviction does not accrue, and the statute of limitations does not begin to run, until the conviction is set aside by the judiciary or the defendant receives a pardon. But we think the district judge wrong about *Heck*, because he did not take account of the rule that claims based on out-of-court events, such as gathering of

evidence, accrue as soon as the constitutional violation occurs. That's because misconduct by the police does not (at least, need not) imply the invalidity of any particular conviction. See not only *Wallace* but also, *e.g.*, *Rollins v. Willet*, 770 F.3d 575 (7th Cir. 2014); *Booker v. Ward*, 94 F.3d 1052 (7th Cir. 1996). These decisions deal with the Fourth Amendment's rule against unreasonable searches and seizures; their holdings are equally applicable to contentions that police tortured suspects during interrogation, because that misconduct is actionable whether or not a suspect confesses, and whether or not any statement is used in evidence at trial.

To the extent that [plaintiffs] may be arguing that police violated their rights by giving false testimony, or that during trial prosecutors withheld material exculpatory evidence about misconduct during their interrogations, *Heck* indeed bars relief until a conviction is set aside. The district court must modify its judgment so that *any claims based on proceedings in court* are dismissed without prejudice under *Heck*. * * * Those claims are unaffected by *Heck* and are outside the scope of anyone's absolute immunity.

*Moore*, 771 F.3d at 446 (emphasis added). Because Fifth Amendment self-incrimination claims occur "in court" by definition, see *Chavez*, 538 U.S. at 767; *Sornberger*, 434 F.3d at 1026–27, they are eligible for deferred accrual under *Heck*.[5]

To be clear, the in-court/out-of-court distinction impacts the applicability of *Heck* tolling, not necessarily *Heck* barring; a § 1983 claim can necessarily imply the invalidity of a conviction or a sentence but nonetheless be ineligible for *Heck*'s deferred-accrual rule. For example, consider that a coerced confession used to incriminate a suspect can form the basis of both a Fourth Amendment coerced-confession claim and a Fifth Amendment self-incrimination claim. The former would be based on out-of-court police action (*e.g.*, unconstitutionally obtaining the statement), and the latter would be based on in-court police action (*e.g.*, the use of the statement for self-incrimination purposes). Whether the confession necessarily implies the invalidity of the

---

[5] The *Moore* court also noted that "[a]bsolute immunity for prosecutors and witnesses * * * would make it hard for these plaintiffs to recover damages based on the conduct of the trials even if their convictions should be vacated some day. That may be why all five plaintiffs stress the injuries they say they suffered at the hands of the police before judicial proceedings began." *Moore*, 771 F.3d at 446. Here, too, several Defendants have raised absolute immunity as an affirmative defense in their answers to Plaintiffs' complaints.

conviction—that is, whether the claim is *Heck* barred—will be the same for both claims. See *Hill v. Murphy*, 785 F.3d 242, 245 (7th Cir. 2015) (noting that a Fifth Amendment due process claim that was *Heck* barred also would have been *Heck* barred—*i.e.*, impugned the validity of the conviction—if framed as a Fourth Amendment excessive-force claim). But only the latter claim—the "in court" claim—would be subject to deferred accrual under *Heck*. The Fourth Amendment claim accrues regardless of whether any subsequent criminal proceeding is initiated, and thus, under *Wallace*, cannot benefit from *Heck* tolling.

Here, Plaintiffs' Fifth Amendment self-incrimination claims are based on Defendants' use of Plaintiffs' incriminating statements in their respective criminal convictions and sentencings. See 12-cv-9158 [1, ¶¶ 84, 117]; 12-cv-9170 [5, ¶¶ 2, 75]; 12-cv-9184 [1, ¶¶ 3, 108]. Because Plaintiffs' claims are based on "in court" violations under *Moore*, *Wallace* does not apply, and Plaintiffs' self-incrimination claims are eligible for deferred accrual under *Heck*. See *Taylor v. City of Chicago*, 80 F. Supp. 3d 817, 824–25 (N.D. Ill. 2015) (summarizing the recent Seventh Circuit case law and concluding that Fifth Amendment self-incrimination claims are eligible for *Heck* tolling).

But the inquiry does not end there. Just because a Fifth Amendment self-incrimination claim is *Heck* eligible does not mean that the claim necessarily implies the invalidity of the conviction. For example, in *Hill v. Murphy*, 785 F.3d 242, 250 (7th Cir. 2015), the Seventh Circuit recently held that only one of three of the plaintiff's Fifth Amendment involuntary-statement claims was *Heck* barred. More specifically, the plaintiff in *Hill* raised three Fourth Amendment claims (illegal entry, unlawful detention, unlawful seizure of a gun) and a three-part Fifth Amendment claim (framed as a due process claim) concerning three allegedly-involuntary statements that he made to police during a pre-arrest interrogation. The court quickly dispensed

with the Fourth Amendment claims, stating that these claims were not *Heck* barred, and noting that "such claims rarely are." *Hill*, 785 F.3d at 245. The court then shifted to the three-part Fifth Amendment claim, noting that only one of the three statements was *Heck* barred because only one of the three statements necessarily implied the invalidity of the conviction. *Id.* ("One of [plaintiff's] due process claims, in contrast [to the other two], challenges his false-statement conviction head on."); see also *Matz v. Klotka*, 769 F.3d 517, 530–31 (7th Cir. 2014) (plaintiff's Fifth Amendment self-incrimination claim was *Heck* barred because the plaintiff's allegedly invalid confession "figured prominently" in the court's sentencing determination, and so "success on his claim would call into question his sentence"). Both *Hill v. Murphy* and *Matz v. Klotka* post-date the Court's initial ruling on Defendants' motion to dismiss, and both opinions show that *Heck* can apply to Fifth Amendment self-incrimination claims.

To determine whether a § 1983 claim necessarily implies the invalidity of a conviction or sentence, a court "must consider the factual basis of the claim," including the factual allegations in the complaint. *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014) ("To the extent that factual allegations do not [imply the invalidity of the conviction or sentence], [the plaintiff] may proceed under § 1983."). At the motion to dismiss stage, courts make this determination by looking to allegations in the complaint, supplemented by information in the public record—such as sentencing transcripts—if available. See, *e.g.*, *Walden v. City of Chicago*, 755 F. Supp. 2d 942, 956 (N.D. Ill. 2010) (affirming at the summary judgment stage what the court concluded at the motion to dismiss stage: that the plaintiff's Fifth Amendment coerced-confession claim was subject to deferred accrual under *Heck* (citing *Walden v. City of Chicago*, 391 F. Supp. 2d 660, 675 (N.D. Ill. 2005) ("Since Plaintiff's well-pleaded complaint contains allegations sufficient to conclude that his conviction was based primarily on his coerced confession * * *, for purposes of

the motion to dismiss at least, the Court holds that Plaintiff could not have challenged his alleged torture, physical abuse, or coercive interrogation without impugning his conviction. Therefore, under *Heck*, Plaintiff's Section 1983 claims for coercive interrogation and torture did not accrue until his conviction was wiped away with the innocence pardon in 2003.")))).

Here, Plaintiffs allege in their respective pleadings that Defendants' use of their incriminating statements was "the only reason that Plaintiff[s were] prosecuted and convicted of the murder of Ms. Glover." See 12-cv-9158 (Saunders) [1, ¶ 117; *id.* ¶ 84 ("The State's Attorney prosecuting the case acknowledged that its entire case against [Saunders] rested on the confession. During pretrial proceedings, the ASA told the court 'we cannot proceed without this confession' and that, if the confession were suppressed, the state would have 'to file a certificate of impairment' because it could not go forward.")]; 12-cv-9184 (Richardson) [1, ¶ 108 (Richardson); *id.* ¶ 3 ("The sum total of the evidence against [Richardson] was his false confession * * *.")]; 12-cv-9170 (Thames) [5, ¶ 75 ("Thames was prosecuted and convicted for Ms. Glover's rape and murder based solely on these false statements."); *id.* ¶ 2 ("The sum total of the evidence against Thames * * * was his and his co-defendants' false confessions.")].[6] In addition to their pleadings, Plaintiffs argue (in briefing the motion to dismiss and the motion to reconsider) that Defendants relied *entirely* on the false confessions in the underlying criminal proceedings. Defendants have not offered any evidence in response to these allegations.

Plaintiffs have adequately pled that their incriminating statements played a significant-enough role in their respective criminal proceedings such that the invalidity of those confessions necessarily implies the invalidity of Plaintiffs' convictions. See *Taylor v. City of Chicago*, 80 F.

---

[6] It is of no consequence here that Plaintiff Thames pled guilty whereas Plaintiffs Saunders and Richardson were tried and convicted. Plaintiff Thames is still eligible for deferred accrual under *Heck* because he alleged that his invalid confession "figured prominently" in the court's sentencing determination. *Matz*, 769 F.3d at 530–31.

Supp. 3d 817, 826 (N.D. Ill. 2015) (plaintiff's allegations in his complaint "that the Defendant Officers coerced him into making self-incriminating statements and these statements were later used during the criminal proceeding to convict him," such that "his conviction rested largely on the unconstitutional use of these coerced statements at trial" were sufficient to justify application of *Heck*'s deferred accrual rule so as to defeat a motion to dismiss the claim as untimely); *Phillips v. City of Chicago*, 2015 WL 5675529, at *3–4 (N.D. Ill. Sept. 24, 2015) (adopting *Taylor*'s rationale in holding that coerced-confession claims were subject to deferred accrual under *Heck* because the plaintiffs "adequately pleaded the significance of their confessions at trial"); *Rivera v. Lake County*, 974 F. Supp. 2d 1179, 1188 (N.D. Ill. 2013) ("*Wallace*'s accrual rule does not trump the *Heck* bar in the coercive interrogation context where 'the plaintiff's conviction rested largely upon the allegedly coerced [confession].'" (quoting *Tillman v. Burge*, 813 F. Supp. 2d 946, 970–71 (N.D. Ill. 2011))).

For these reasons, the Court now vacates its dismissal of Count I of Plaintiffs' complaints as time-barred and reinstates Count I in its entirety in each of Plaintiffs' complaints. Defendants are free to re-raise this argument at the summary judgment stage should evidence surface indicating that Plaintiffs' incriminating statements did not figure prominently in their respective convictions and sentences, such that the invalidity of those confessions does not call Plaintiffs' convictions and sentences into question. See, *e.g.*, *Walden*, 755 F. Supp. 2d at 956.

### B. Motion to Bifurcate and Stay Discovery on Plaintiffs' *Monell* Claims

Plaintiffs seek to hold the City of Chicago liable under 42 U.S.C. § 1983 pursuant to *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978), for (1) the City's alleged pattern and practice of using unconstitutional means to obtain confessions from suspects and arrestees, (2) the City's alleged policy and practice of fabricating statements, (3) the City's

alleged practice of not recording interrogations, and (4) the City's alleged failure to adequately train, supervise, and discipline officers who engaged in the alleged constitutional violations. The City now seeks to bifurcate Plaintiffs' *Monell* claims against it (see 12-cv-9158 [207]; 12-cv-9170 [149]; 12-cv-9184 [137]), and to stay discovery and trial on those claims pending resolution of Plaintiffs' § 1983 claims against the individual defendants.

In support of its motion, the City says that Plaintiffs have already served it with broad and wide-ranging *Monell*-related discovery requests (which it has yet to answer), claiming that "these requests are likely only the beginning of such expansive *Monell* related discovery," [207, at 3]. The City argues that bifurcation will increase judicial economy by potentially avoiding this burdensome discovery. The City also argues that bifurcation will limit the potential for prejudice against the individual Defendants at trial. Plaintiffs respond by arguing that bifurcation will decrease judicial economy, claiming that the discovery on their individual claims largely overlaps with their *Monell* discovery, that their *Monell* discovery is nearly complete, and that bifurcation will expand the scope of this case from three to six civil trials. Plaintiffs also argue that they will be prejudiced by the delay in adjudicating these important claims.

Federal Rule of Civil Procedure 42(b) authorizes federal courts to order a separate trial of one or more separate issues or claims if separation (or bifurcation) is warranted "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Bifurcation may be appropriate if "the separation would prevent prejudice to a party or promote judicial economy." *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007) (citation omitted). "If one of these criteria is met, the district court may order bifurcation as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment." *Id.* The Court enjoys "considerable discretion" over its decision. *Treece v. Hochstetler*, 213 F.3d 360, 364–65

(7th Cir. 2000) (internal quotations omitted). Federal Rule of Civil Procedure 26(d) also permits a court to stay discovery on *Monell* claims. Fed. R. Civ. P. 26(d); see also *Carr v. City of N. Chicago*, 908 F. Supp. 2d 926, 927 (N.D. Ill. 2012).

The plethora of bifurcation motions and the inclination of many judges to grant them stems in large part from the recognition that, often, "claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them." *Moore v. City of Chicago*, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007). But this argument is not always applicable, and so courts must evaluate each motion on its own merits; this Court in particular has both granted and denied motions to bifurcate filed by municipal defendants. Compare *Terry v. Cook Cnty. Dep't of Corr.*, 2010 WL 2720754 (N.D. Ill. July 8, 2010) (denying motion to bifurcate), with *Cruz v. City of Chicago*, 2008 WL 5244616 (N.D. Ill. Dec. 16, 2008) (granting motion to bifurcate).

Regarding this motion, the parties' first disagreement relates to the volume of potentially-avoidable *Monell* discovery. The City says that Plaintiffs *Monell* requests thus far are vast and burdensome, and only represent a sample of what's likely to come. The City points to discovery requests that Plaintiffs issued in May and June of 2015 (which the City has not yet answered) as proof of the burden of Plaintiffs' requests, arguing that these requests represent only Plaintiffs' first attempt to collect *Monell*-related discovery. Plaintiffs disagree, claiming that their *Monell*-related requests overlap considerably with their non-*Monell*-related requests and are nearly complete. Plaintiffs also argue that they have been requesting *Monell*-related discovery all along, and that their May and June 2015 requests cover both individual and *Monell*-related requests, many of which overlap. Plaintiffs further contend that, should bifurcation occur, any attempt to

separate individual-Defendant discovery requests from *Monell*-related discovery requests will be hotly disputed.

Upon closer inspection, Plaintiffs' arguments are unavailing. The Court is not convinced that Plaintiffs were pursuing *Monell*-related discovery before May and June of 2015, at least not to a measurable degree. While Plaintiffs provided some examples of pre-May requests that could be interpreted as *Monell*-related, those examples pale in comparison to the heavily-*Monell*-related requests that Plaintiffs made in May and June 2015. [See, *e.g.*, 207-4, at 1 ("Please identify every policy, procedure, practice of or step taken by the City of Chicago between 1982 and 1997 to train or instruct Chicago Police Department Detectives regarding the custodial interrogation of suspects or witnesses.").] The Court is also unconvinced that the parties—or, if necessary, Magistrate Judge Finnegan—would have much difficulty delineating individual-Defendant-related requests from *Monell*-related requests. The Court also questions Plaintiffs' representation that they are nearly complete with their *Monell* discovery. Perhaps Plaintiffs are nearly complete in *issuing Monell*-related requests, but their *collection* of that discovery is not far along (based in part on the City's representations that it has not yet responded in detail to the May and June 2015 requests, plus the fact that expert discovery has yet to begin). In short, the potentially-avoidable amount of discovery here—pertaining to four separate *Monell* allegations—is vast and would place a considerable burden on the City.

Second, the parties dispute whether bifurcation would avoid, as opposed to delay, the *Monell* discovery. Of course, should bifurcation occur and should Plaintiffs succeed in phase one on their individual claims, they would be entitled to proceed with their phase two *Monell* claims, meaning that the *Monell* discovery would still occur at some point in the future (barring a settlement of some kind). But the parties disagree as to the fate of the *Monell* claims should

Plaintiffs fail on their phase one claims. The Seventh Circuit has acknowledged that "a city's liability is derivative of its police officer's liability," such that "a municipality's liability for a constitutional injury 'requires a finding that the individual officers are liable on the underlying substantive claim.'" *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000) (citations omitted). On the other hand, the Seventh Circuit has suggested that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010). Presumably such a situation could arise in this case should Plaintiffs be unable to recover from the Defendant Officers because of their qualified immunity, but Plaintiffs could still recover from the municipality, which lacks such a protection.

The Court is not persuaded in either direction on this issue. Plaintiffs try to devise hypothetical scenarios in which their *Monell* claims might fall within the so-called *Thomas* "liability gap," warning that in those instances they might be unjustly precluded from litigating their *Monell* claims based on their failure to prove liability on their individual claims. But Plaintiffs' concern is premature. Other than the qualified immunity scenario mentioned above, the Court is unable to determine whether Plaintiffs' hypothetical theories are plausible in light of the allegations in Plaintiffs' complaints, or whether these hypothetical scenarios would create a potential inconsistency with some hypothetical verdict in this case. Faced with four separate *Monell* claims, it is too early for the Court or the parties to presage whether any legitimate "liability gaps" might exist here; any such determination would need to be made at the conclusion of the trial on individual liability. While this issue may arise again in this litigation, it does not influence the Court's calculus regarding the propriety of bifurcation.

Third, the City tries to sweeten the pot by offering a Limited Consent to Entry of Judgment (12-cv-9158 [207-8]; 12-cv-9170 [149-8]; 12-cv-9184 [137-8]), stating that if the case is bifurcated, and if Plaintiffs were to succeed in establishing that any of the individual police Defendants is liable for violating a Plaintiff's constitutional rights as alleged in the complaint, the City will agree to entry of judgment against it requiring it to indemnify the individual police Defendant(s) for compensatory damages and reasonable attorneys' fees, *even if* the individual is found to have violated a Plaintiff's constitutional rights but is not liable because he or she is entitled to qualified immunity. Plaintiffs are not moved by the City's (increasingly common) gesture, arguing that the Limited Consent does not offer all of the relief they seek and instead offers economic assurances that the City is required to pay anyway.

Regarding the City's indemnification requirements, Illinois state law requires local governments "to pay any tort judgment or settlement for compensatory damages" for which their employees are liable while acting in the scope of their employment. 745 ILL. COMP. STAT. 10/9-102. But Illinois law *permits*, rather than *requires*, indemnification for "associated attorneys' fees and costs," meaning that the Limited Consent does go beyond what is required of the City under state law. But ultimately the City's Limited Consent does not factor into the Court's analysis here. Even if the City consents to pay certain monetary liabilities, that does not end the case and controversy as it relates to the City. See, *e.g.*, *Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th Cir. 2015) (holding that a defendant's offer of full compensation does not moot the litigation or otherwise end the Article III case or controversy). While a Limited Consent such as this might persuade certain plaintiffs to agree to bifurcate or to drop their *Monell* claims altogether (thus promoting judicial efficiency), Plaintiffs here have claimed allegiance to their efforts to hold the City accountable "for the systemic practices that cause constitutional harms to

its citizens," regardless of the City's indemnification promises. [220, at 22]; see also *Owen v. City of Independence, Mo.*, 445 U.S. 622, 651 (1980) ("[Section] 1983 was intended not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations, as well."). Because the City's Limited Consent presently does not impact the likelihood of phase two litigation in this case, it does not impact the Court's decision regarding bifurcation.

Fourth, Plaintiffs object to the timing of the City's motion, arguing that the end of fact discovery is near, and that any attempt to bifurcate the *Monell* claims should have been made long ago. Plaintiffs tie this into an efficiency argument, claiming that bifurcation at this stage will actually prolong the case and not promote judicial economy. The Court disagrees. While it is prudent to rule on bifurcation at the outset of discovery, the Court sees no great prejudice in bifurcating the case now. As the Court already noted, Plaintiffs' May and June 2015 discovery requests—which the City apparently has not responded to—represent the bulk of their extant *Monell*-related requests. These requests can easily be set aside. In addition, the parties have not yet begun expert discovery and so, moving forward, the parties can focus their discovery efforts on Plaintiffs' individual claims. Thus, the timing of this bifurcation is not problematic from a "judicial economy" standpoint.

Fifth, both parties argue that an adverse decision on this motion will result in undue prejudice to them. Plaintiffs argue that bifurcation will prejudice them because they are unhappy with the terms of the Limited Consent. But the Limited Consent is only a unilateral representation by the City and does not preclude Plaintiffs from pursuing remedies not offered in the consent. Plaintiffs also argue that bifurcation seeks to avoid the non-economic benefits of Plaintiffs' *Monell* claims, but bifurcation only delays Plaintiffs' realization of those benefits, it

does not avoid them. Plaintiffs correctly argue that bifurcation would create a delay in the adjudication of their *Monell* claims, but delay is always a concern with bifurcation, and the Court will consider the impact of the delay in making its decision. Finally, Plaintiffs argue that they have already conducted considerable *Monell* discovery, and bifurcation would render those efforts for naught. But the Court has already stated that the bulk of the *Monell* discovery appears yet to come; to the extent that Plaintiffs have conducted *Monell* discovery already, they will have a head start should the case proceed to the *Monell* phase.

The City argues that it will suffer prejudice if the case is not bifurcated because it will endure an undue burden in responding to potentially unnecessary discovery. The likelihood that bifurcation might avoid costly discovery is a common consideration in motions to bifurcate *Monell* claims, and the Court will consider the parties' arguments regarding judicial economy in making its final decision. The City also argues that the individual Defendants will suffer from the presentation of the vast *Monell* discovery at trial, in which Plaintiffs will present four separate arguments regarding systemic, unconstitutional practices within the individual Defendants' municipality. While the Court does have some ability to monitor and control prejudice through limiting instructions and rulings on motions in limine, the Court does recognize the potential prejudice to the individual Defendants, and will consider this factor in its analysis.

Taking all of these factors into consideration, the Court grants the City's motion to bifurcate Plaintiffs' § 1983 *Monell* claims against the City, and stays both discovery and trial on those claims. The Court's decision is based on the potential benefits to efficiency and judicial economy, the potential prejudice to the individual Defendants should these claims be tried together, and the lack of any substantial prejudice to Plaintiffs in delaying the adjudication of their *Monell* claims. Ordinarily the Court would enter the City's Limited Consent on the docket

in conjunction with its bifurcation order, but the Court notes that the City proposed an amendment to its Limited Consent in its reply brief, see, *e.g.*, 12-cv-9158 [233, at 6], and Plaintiffs have not responded to that offer. The parties are ordered to meet and confer regarding the Limited Consent, and within 21 days of the date of this order, the parties are to file a joint status informing the Court as to which, if any, Limited Consent they would like the Court to enter in this case. The parties should send a copy of any agreed-upon Limited Consent to the Court's Proposed Order Box.

## IV. Conclusion

For the reasons set forth above, the Court orders as follows:

In *Saunders v. City of Chicago, et al.* (**No. 12-cv-9158**), Plaintiff's motion for reconsideration [185] is granted and Count I of Plaintiff's complaint [1] is reinstated in its entirety. Defendant City of Chicago's motion to bifurcate and stay discovery and trial [207] is granted.

In *Thames v. City of Chicago, et al.* (**No. 12-cv-9170**), Plaintiff's motion for reconsideration [131] is granted and Count I of Plaintiff's first amended complaint [5] is reinstated in its entirety. Defendant City of Chicago's motion to bifurcate and stay discovery and trial [149] is granted. As a housekeeping matter, the Clerk is instructed to strike docket entry [144] as an active motion on the Court's docket.

In *Richardson v. City of Chicago, et al.* (**No. 12-cv-9184**), Plaintiff's motion for reconsideration [119] is granted and Count I of Plaintiff's complaint [1] is reinstated in its entirety. Defendant City of Chicago's motion to bifurcate and stay discovery and trial [137] is granted.

For all cases, within 21 days of the date of this order, the parties are to file a joint status informing the Court as to which, if any, Limited Consent they would like the Court to enter in this case. The parties should send a copy of any agreed-upon Limited Consent to the Court's Proposed Order Box.


Dated:  November 17, 2015

_____
Robert M. Dow, Jr.
United States District Judge