IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL SAUNDERS, | ) | |
| | ) | No. 12-cv-09158 |
| Plaintiff, | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| v. | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT COOK COUNTY'S MOTION FOR ENTRY OF ORDER
REGARDING FAIRNESS OF SETTLEMENT**

Defendant Cook County, Illinois (the "County"), by its undersigned attorneys, moves for entry of an order finding that the County's settlement of *Thames v. City of Chicago, et al.*, No. 12-cv-09170 ("*Thames*"), *Richardson v. City of Chicago, et al.*, No. 12-cv-09184 ("*Richardson*"), and *Saunders v. City of Chicago, et al*., No. 12-cv-09158 ("*Saunders*") cases (collectively, with *Swift v. City of Chicago, et al.*, No. 2012-L-12995 (Circuit Court of Cook County) ("*Swift*"), the "Englewood Four" cases) is fair and reasonable, was made in reasonable anticipation of a finding of liability, and that the County's actions are those of a reasonable uninsured.

The County further respectfully requests that this Court schedule an evidentiary hearing at which the County will introduce evidence in support of the above finding. The County will be prepared to present testimony concerning its decision to settle the Englewood Four cases, including: (1) the County's evaluation of the risks and potential liability in light of the claims brought against Cook County Assistant State's Attorneys ("ASAs") in the Englewood Four cases, taking into consideration the facts and legal posture of the Englewood Four cases and benchmarking of prior judgments in malicious prosecution cases; and (2) the probable liability of

10171362

the County on the indemnification claims brought against it for any judgment entered against the ASAs. As this hearing addresses the most significant issues presented in *Starr Indemnity & Liability Company v. Cook County, Illinois, et al.*, Case No. 17-cv-01430, the pending "Declaratory Judgment Action," which is currently the subject of a Motion to Reassign to this Court, this Court should order that Starr Indemnity & Liability Company ("Starr") and AXIS Surplus Insurance Company ("AXIS") participate in the hearing.

## I. BACKGROUND

### A. The Englewood Four Cases

This matter concerns four related cases brought by four individual plaintiffs, collectively referred to as the "Englewood Four," alleging that misconduct by Chicago police officers and Cook County ASAs led to their wrongful convictions for a 1994 rape and murder. As a result of their convictions, each of the Englewood Four served at least 16 years in prison. After their convictions were overturned, and they received certificates of innocence, each filed a lawsuit. The defendants in these cases included the Chicago police officers involved in their arrests, the ASAs involved in their prosecutions, the City of Chicago (the "City"), and the County. Two of those cases, *Thames* and *Richardson*, were reassigned to this Court, which was presiding over a third case, *Saunders*, for pretrial proceedings per the Executive Committee's March 11, 2013 Order. (*Thames*, Dkt. 33.) The fourth related case, *Swift*, was before the Circuit Court of Cook County.

In April 2017, the City, the County, and the Englewood Four plaintiffs participated in a mediation before Retired Circuit Court Judge Eileen Brewer. That mediation did not result in a settlement of any of the Englewood Four cases.

The *Swift* trial was scheduled to begin on May 17, 2017. In early May 2017, the City police officers and the City settled the *Swift* case for $6.75 million. On May 17, 2017—the day of trial—the County settled the *Swift* matter for $5.625 million.

Later in 2017, the City settled the remaining three cases against the City and its police officers for approximately $24.25 million. Altogether, the City paid approximately $31 million to settle all claims against the City police officers and the City in the Englewood Four cases.

After these settlements, the only claims that remained were malicious prosecution claims against the ASAs and a claim against the County premised on the County's alleged duty to indemnify the ASAs for any liability assessed against the ASAs in *Thames*, *Richardson*, and *Saunders*.

**B.    The County's Insurance Coverage**

The County has a $10 million self-insured retention ("SIR") and four insurance policies with successive $10 million limits. Starr is responsible for the first layer of the County's excess insurance, which responds to loss between $10 and $20 million. The County has made repeated demands upon Starr and the other excess insurance carriers that they offer funds to settle the Englewood Four cases, but none of the excess carriers have agreed to contribute anything.

On February 24, 2017, Starr filed the Declaratory Judgment Action against the County and each of the Englewood Four plaintiffs. On September 6, 2018, Starr filed its Second Amended Complaint for Declaratory Relief in the Declaratory Judgment Action, attached hereto as Exhibit 1. In its Second Amended Complaint, among other things, Starr seeks a declaration that it has no coverage obligations to the County because "Cook County is not legally obligated to pay as damages any amount for any judgment or settlement relating to any alleged liability of ASA Valentini and/or ASA Johnson in any of the Underlying Lawsuits". (Ex. 1 at 13.)

AXIS is responsible for the second layer of the County's excess coverage, which responds to loss between $20 and $30 million.[1] On November 8, 2018, the County filed an Answer and Amended Counterclaim for Declaratory Relief in the Declaratory Judgment Action against Starr, attached hereto as Exhibit 2, seeking a declaration that, among other things, the settlement in the *Swift* case, and the global settlement in the *Richardson*, *Thames*, and *Saunders* cases, were fair and reasonable, the settlement was made in reasonable anticipation of a finding of liability against the County in the Englewood Four cases arising out of the ASAs' alleged malicious prosecution, and in settling the claims, the County's actions were those of a reasonable uninsured.

### C. The Settlement of the Three Remaining Cases

At the April 2017 mediation, Starr refused to offer any money in settlement of the Englewood Four cases. Since then, Starr and the other excess insurance carriers have failed to offer any funds in settlement of the Englewood Four cases.

The County, having assessed the potential liability and risks associated with a trial of the Englewood Four cases, chose to pursue a negotiated resolution of the liability it was facing. After settling the *Swift* matter, the County negotiated in good faith with the remaining three plaintiffs in the Englewood Four cases, those efforts culminating in a settlement that was only achieved with the substantial assistance of Magistrate Judge Gilbert. That settlement calls for the County to pay the plaintiffs in the *Saunders*, *Thames*, and *Richardson* lawsuits a total of $23.97 million.

Given the positions taken by Starr and by AXIS in the Declaratory Judgment Action that the settlement is not covered under their policies because the County had no duty to indemnify

---

[1] In light of the County's settlements with the Englewood Four plaintiffs totaling $29.6 million, discussed below, none of the County's other excess insurance carriers are implicated at this time.

the ASAs, the County insisted that the settlement be conditioned upon a finding that the settlement is fair and reasonable, the settlement was made in reasonable anticipation of a finding of liability, and that the County's actions are those of a reasonable uninsured, in accordance with the standards set forth in *Guillen v. Potomac Insurance Co. of Illinois*, 203 Ill. 2d 141 (Ill. 2003) (the "*Guillen* Hearing"). That is precisely the same issue raised by the County in the Declaratory Judgment Action.

## II. ARGUMENT

The standard of review by which this Court should consider whether the settlement entered into by the County and the Englewood Four is fair and reasonable is well-settled. Under Illinois law, "with respect to the insured's decision to settle, the litmus test must be whether, considering the totality of the circumstances, the insured's decision conformed to the standard of a prudent *uninsured*." *Guillen*, 203 Ill. 2d at 163 (emphasis in original) (internal quotation marks omitted); *cited with approval in, e.g.*, *CE Design Ltd. v. King Supply Co.*, 791 F.3d 722, 725 (7th Cir. 2015); *Pietras v. Sentry Ins. Co.*, 513 F. Supp. 2d 983, 986 (N.D. Ill. 2007); *Rogers Cartage Co. v. Travelers Indem. Co.*, 2018 IL App (5th) 160098, ¶ 70, *appeal denied*, 108 N.E.3d 885 (Ill. 2018); *Cent. Mut. Ins. Co. v. Tracy's Treasures, Inc.*, 2014 IL App (1st) 123339, ¶ 56. "Similarly, with respect to the amount of damages agreed to, the test is what a reasonably prudent person in the position of the [insured] would have settled for on the merits of plaintiff's claim." *Guillen*, 203 Ill. 2d at 163 (internal quotation marks omitted). Under the "prudent uninsured test," the court "must posit that the uninsured defendant has assets sufficient to satisfy a substantial judgment and that it must weigh whether those assets are best put to use litigating certain issues that could lower the value of the case or whether an early settlement, presumably at a discount, is more advantageous." *Cent. Mut. Ins. Co.*, 2014 IL App (1st) 123339, ¶ 61. Further, "in Illinois, the test for the reasonableness of the decision to settle, as well

as the amount of the settlement, is objective rather than subjective." *Daily v. Greensfelder, Hemker & Gale, P.C.*, 2018 IL App (5th) 150384, ¶ 30, *citing Cent. Mut. Ins. Co.*, 2014 IL App (1st) 123339, ¶ 56.

The purpose of this process is to ensure that, given the insurer's lack of participation in and approval of the settlement, the settlement was not the result of collusion between an insured and the underlying plaintiff. *Guillen*, 203 Ill. 2d at 163; *see also Pietras*, 513 F. Supp. 3d at 986 ("This rule is meant to prevent an insured defendant from entering into a collusive settlement in which it overpays the plaintiff, knowing that it is in effect using the insurer's checkbook."). The fairness analysis "involves a commonsense consideration of the totality of facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial." *Guillen*, 203 Ill. 2d at 163 (internal quotation marks omitted). It depends "on the quality and quantity of proof which [the insured] would expect to be offered against it in the underlying action." *Fed. Ins. Co. v. Binney & Smith, Inc.*, 393 Ill. App. 3d 277, 283, 913 N.E.2d 43, 49 (1st Dist. 2009) (internal quotation marks omitted).

        **A.    The $23.97 Million Settlement of the *Saunders*, *Thames*, and *Richardson* Lawsuits is a Reasonable Compromise**

The amount of the settlement will be shown to be reasonable. As will be established at the fairness hearing, there are serious claims of malicious prosecution asserted against the ASAs in connection with the wrongful convictions of the Englewood Four plaintiffs. The plaintiffs in *Saunders*, *Thames*, and *Richardson* allege that as a result of the conduct of the ASAs and the Chicago police officers, they each spent over 16 years in prison for crimes they did not commit. Historically, clients of plaintiffs' counsel have received jury awards averaging $1.73 million per year of wrongful imprisonment. *See, e.g.*, *Fields v. City of Chicago*, No. 10-cv-1168 (N.D. Ill.) ($22 million jury award for 18 years of wrongful imprisonment, totaling $1.22 million per year

of wrongful imprisonment); *Johnson v. Guevara*, No. 05-cv-1042 (N.D. Ill.) ($21 million jury award for about 11 years of wrongful imprisonment, totaling $1.91 million per year of wrongful imprisonment); *Jimenez v. City of Chicago*, No. 09-cv-8081 (N.D. Ill.) ($25 million jury award for 16 years of wrongful imprisonment, totaling $1.56 million per year of wrongful imprisonment); *Dominguez v. Waukegan*, No. 04-cv-2907 (N.D. Ill.) ($9 million jury award for 4 years of wrongful imprisonment, totaling $2.25 million per year of wrongful imprisonment); *Deskovic v. City of Peekskill*, No. 07-cv-08150 (S.D.N.Y.) ($40 million jury award for 16.5 years of wrongful imprisonment, totaling $2.42 million per year of wrongful imprisonment); *White v. McKinley*, No. 05-cv-203 (W.D. Mo.) ($16 million jury award for 5 years of wrongful imprisonment, totaling $3.2 million per year of wrongful imprisonment); *Ayers v. City of Cleveland*, No. 12-cv-753 (N.D. Ohio) ($13.2 million jury award for 11 years of wrongful imprisonment, totaling $1.2 million per year of wrongful imprisonment); *Restivo Halstead v. Nassau Cnty., et al.*, No. 06-cv-6720 (E.D.N.Y.) ($36 million jury award for 36 collective years of wrongful imprisonment, totaling $1 million per year of wrongful imprisonment); *Rivera v. Guevara, et al.*, No. 12-cv-04428 ($17.175 million jury award for 21 years of wrongful imprisonment, totaling $.82 million per year of wrongful imprisonment).

Applying the average award in these cases of $1.73 million per year to the collective 48 years of wrongful imprisonment alleged by Saunders, Thames, and Richardson, the average exposure in the event of a jury award in favor of the plaintiffs here would be $83.04 million. Allowing for a credit of $24.25 million for the City's settlement of those three cases, the County thus faced an average exposure, in the event of a jury award, of $58.79 million. The County settled the three cases for $23.97 million—just 40.8% of such average exposure. The risks involved in going to trial were only exacerbated by the City's settlement of all claims against it

and its police officers, which would mean that the ASAs would be going to trial as the sole defendants. If the plaintiffs obtained a judgment against the ASAs, the plaintiffs would be entitled to recover their attorneys' fees, which could add millions more dollars to any judgment. The County determined that if the plaintiffs were to succeed at trial against the ASAs, the damages award could far exceed what the City agreed to pay in settlement.

> B. **The County Faced the Likelihood That the Court Would Conclude That it Was Legally Required to Indemnify the ASAs For Any Judgment Entered Against Them**

The applicable legal authority makes it likely that the County would be legally obligated to indemnify the ASAs. Recently, in *McCullough v. Hanley*, 2018 WL 3496093, at *18 (N.D. Ill. July 20, 2018), the District Court stated:

> Lastly, the prosecutor defendants [the former DeKalb County State's Attorney and three former DeKalb County Assistant State's Attorneys] contend that the indemnification claim against DeKalb County alleged in Count XI should be dismissed because they are State employees and not employees of DeKalb County. This contention is without merit because the County has a duty to indemnify State officials, like State's Attorneys, because the County funds the office of that official. *Robinson v. Sappington*, 351 F.3d 317, 339 (7th Cir. 2003) ("The fact that some of the parties involved are state officials, as opposed to employees of the [County], does not alter that fiscal responsibility."); *see also Cannon v. Burge*, No. 05 C 2192, 2006 WL 273544, at *21 (N.D. Ill. Feb. 2, 2006) ("[T]hat [the State's Attorney] was not an employee of the County does not automatically release the County from liability for indemnification."). Therefore, the court denies the prosecutor defendants' motion to dismiss count XI.

Indeed, based on *McCullough* and the other cases cited in that recent opinion, it would have been irresponsible for the County to ignore the possibility that it could be required to pay whatever judgment the Englewood Four were able to achieve against the ASAs.

> C. **Case Law Supports a Finding that the Settlement Was Fair and Reasonable, the Settlement Was Made in Reasonable Anticipation of a Finding of Liability, and the County's Actions Are Those of a Reasonable Insured**

The evidence will also show that the County repeatedly sought its insurers' participation in settlement efforts, but the insurers refused. Instead, on February 24, 2017, Starr filed the

Declaratory Judgment Action seeking to avoid liability, and AXIS took the position that it had no obligations until Starr's $10 million layer had been exhausted. The County was ultimately successful in settling these cases after extensive and vigorous settlement negotiations overseen by Magistrate Judge Gilbert. At all times, the County acted as a reasonably prudent uninsured, and the settlement to which it agreed is fair and reasonable.

In *Maxum Indem. Co. v. Eclipse Mfg. Co.*, No. 06 C 4946, 2013 WL 5993389 (N.D. Ill. Nov. 12, 2013), Judge Lefkow found the insured's decision to settle was made in reasonable anticipation of liability in similar circumstances. There, "a seasoned magistrate judge" guided the settlement negotiations, which is a "strong indication that the negotiations were arms length and that potential liability was fully and fairly assessed." *Id.* at *6. Further, the insurers were invited to participate in the settlement process, "which indicates that the negotiations were conducted in good faith." *Id*. In addition, the settlement included claims on which the insured's ultimate liability was uncertain. Prior to the settlement, the insured won summary judgment on three of the five claims in the case in a ruling which Judge Lefkow observed was "unlikely to be overruled." *Id*. Nonetheless, the settlement included payments for those three dismissed claims. The court found that settlement was still fair and reasonable, as even the "unlikely" possibility that the decision would be overturned caused "at least delay, uncertainty, and further litigation expense, factors typically favoring settlement." *Id*.; *see also Fed. Ins. Co.*, 393 Ill. App. 3d at 284 (settlement reasonable due to risks of any litigation, even though insured believed plaintiffs' claims "were entirely without merit" and that its products were "safe and non-toxic").

Here, the settlement negotiations were guided by Magistrate Judge Gilbert, the County's insurers were invited to participate, and the County settled the claims against it in light of both the relative strength of the Englewood Four plaintiffs' claims against the ASAs and the federal

court precedent cited above strongly supporting the plaintiffs' claims that the County has a duty to indemnify the ASAs. Just as in *Maxum*, the settlement here was fair and reasonable, and done in anticipation of potential liability. Notably, the County does not have to prove that it definitively has actual liability to the Englewood Four plaintiffs. *See, e.g.*, *Fed. Ins. Co.*, 393 Ill. App. 3d at 282 (insured "need not establish actual liability" to show settlement was fair and reasonable). Instead, the County must show only that its decision to settle and the settlement amount were fair and reasonable. *Guillen*, 203 Ill. 2d at 163. The settlement at issue here easily passes this bar.

Indeed, unlike the settlements at issue in *Guillen* and in *Maxum*, both of which involved settlements in which the defendant assigned its rights under its insurance policy to the plaintiff in exchange for the plaintiff's agreement to look to the insurance company as the sole source of recovery, here the County has agreed to make the full settlement payment to the plaintiffs out of *its own funds* regardless of whether the County receives any reimbursement from Starr and AXIS. Accordingly, collusion between the County and the plaintiffs should not be of concern to Starr and AXIS.

**D.     The County Requests That the Court Schedule An Evidentiary Hearing**

The County respectfully requests that this Court schedule an evidentiary hearing at which it will present evidence of the fairness of the settlement that it entered into with the Englewood Four. Because a determination of the fairness of the settlement is also a central issue in the Declaratory Judgment Action, this Court should also order Starr and AXIS to participate in the hearing.

At the hearing before this Court on December 19, 2018, both Starr and AXIS insisted that no such fairness hearing could occur without extensive discovery going to every fact and legal issue in the Englewood Four cases. But such statements belie the straightforward analysis that is

before this Court. The only issue before this Court is whether the County's $23.97 million settlement of the *Saunders*, *Thames*, and *Richardson* cases is a reasonable compromise of the exposure facing the County. The discovery that Starr and AXIS may need is not nearly as broad as Starr and AXIS argued before this Court. To reach a conclusion at the *Guillen* Hearing, this Court need not conduct "a trial within a trial" of the merits of the Englewood Four claims. To the contrary, all the County need show is that it faced a "reasonable apprehension of a finding of liability," and that it reasonably compromised its financial exposure.

### III. CONCLUSION

WHEREFORE, Defendant Cook County, Illinois respectfully requests that this Court schedule an evidentiary hearing, order that Starr Indemnity & Liability Company and AXIS Surplus Insurance Company participate in that hearing, and, based on the evidence presented at the hearing and in this Motion, enter an order finding that the settlement of the *Saunders*, *Thames*, and *Richardson* cases is fair and reasonable, the settlement was made in reasonable anticipation of a finding of liability, and that the County's actions are those of a reasonable uninsured.

Dated: January 3, 2019

DEFENDANT COOK COUNTY, ILLINOIS

By /s/ *Kenneth S. Ulrich*
      One of Its Attorneys

Kenneth S. Ulrich (#6195603)
A. Colin Wexler (#6270813)
Emily D. Gilman (#6317338)
GOLDBERG KOHN LTD.
55 East Monroe Street
Suite 3300
Chicago, IL  60603
(312) 201-4000
kenneth.ulrich@goldbergkohn.com
colin.wexler@goldbergkohn.com

emily.gilman@goldbergkohn.com

Cathy McNeil Stein
April M. Perry
Jessica Scheller
COOK COUNTY STATE'S ATTORNEY'S OFFICE
Civil Actions Bureau
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-5365
cathymcneil.stein@cookcountyil.gov
april.perry@cookcountyil.gov
jessica.scheller@cookcountyil.gov